Reginald T. HUEY, Petitioner,

v.

DEPARTMENT OF HEALTH AND
HUMAN SERVICES, Respondent.

Appeal No. 85–915.

United States Court of Appeals,
Federal Circuit.

April 18, 1986.

Reginald T. Huey, pro se.

Richard K. Willard, Acting Asst. Atty.
Gen., David M. Cohen, Director, Robert A.
Reutershan and Stuart James, Commercial
Litigation Branch, Dept. of Justice, Wash-
ington, D.C., submitted, for respondent.

Before SMITH, Circuit Judge, SKEL-
TON, Senior Circuit Judge, and BISSELL,
Circuit Judge.

SKELTON, Senior Circuit Judge.

This is an appeal by Reginald T. Huey
(Petitioner or Huey) from a decision of an
arbitrator dismissing his grievance appeal
from a twenty day suspension order of his
employer, the Department of Health and
Human Services, Social Security Adminis-
tration, Mid-America Program Service Cen-
ter (Respondent or Agency) for being un-
timely filed. We reverse and remand for a
hearing on the merits.

The facts show that Huey was employed
by respondent at its Mid-America Program
Service Center (PSC) in Kansas City, Mis-
souri. He was also executive vice presi-
dent of the American Federation of
Government Employees, Local 1336, AFL–
CIO (The Union or AFGE Local 1336). At
the time the events in this case occurred, as
stated below, an agreement existed be-
tween the Social Security Administration
and the American Federation of Govern-
ment Employees (The National Agreement)
which governed and controlled problems
and issues arising between the agency and
its employees, such as reprimands, suspen-
sions, removals, wages, overtime, appeals
to an arbitrator or to the Merit Systems
Protection Board (MSPB), and other related
problems. Both parties rely on various
provisions of this agreement in the instant
case.

On July 14, 1983, Huey obtained approv-
al for 8 hours of official time for that day
to participate as a Union representative in
an arbitration hearing, not related to the
instant case, at 911 Walnut Street, Kansas
City, Missouri. The matter being arbitrat-
ed in that case was a Union-Management
grievance between AFGE Local 1336 and
the Regional Office, Office of Hearings
and Appeals. At approximately 9:15 A.M.
his second line supervisor, Mr. Moselle, en-
tered the hearing room, and informed Huey
that he was rescinding his official time, and
ordered him to return to the PSC immedi-
ately. Huey asked Moselle to reduce his
order rescinding the official time to writ-
ing, and offered him Form 75 for such
purpose. Moselle refused to accept Form

75 and stated he would put nothing in writing. Moselle then stated that Huey's failure to return to the PSC as directed *could* lead to disciplinary action, but he did not say what disciplinary action could or would be considered. Since Moselle had questioned Huey's use of official time, and to ensure that the hearing was not subsequently interrupted, Huey called his leave approving official, Ms. Billy Fulk, and requested and received approval for 8 hours annual leave for July 14, 1983, in lieu of the 8 hours of official time previously granted. Huey did not return to the PSC as ordered by Moselle, but continued to participate in the hearing in progress.

On July 25, 1983, Moselle issued a proposal to suspend Huey for 20 work days for:

> Obtaining approval for the use of official time by making a knowingly false statement to your immediate supervisor, Mrs. Billy Fulk, and your subsequent failure to follow my direct order to return immediately to the Program Service Center (PSC).

Huey and his representative, Mr. Carl Harper, gave an oral and written reply to this proposal on August 15, 1983. Their reply stated, among other things, that under the law Moselle could not rescind Huey's approved official leave time while he was acting as a Union representative, and that he could not be disciplined while he was on annual leave and engaged in a protected activity. Nevertheless, on August 29, 1983, Mr. Jerry Witherspoon, who is Moselle's immediate supervisor, issued a decision suspending Huey for 20 work days, based on the infractions charged by Moselle. This decision was contained in a letter to Huey from Witherspoon, who occupied the position of Chief, Reconsideration and Disability Review Branch. The letter stated that Huey's suspension would be effective August 30, 1983, through September 27, 1983. The decision letter also contained the following statement with reference to an appeal of the suspension by Huey:

> If you wish to appeal this suspension, you have the option of either appealing in writing to the Merit Systems Protection Board (MSPB), or filing a grievance in writing at Step 3 of the grievance procedure. You may not use both procedures and to be considered, an appeal or grievance must be *initiated* within 20 calendar days after the effective date of this suspension. In either procedure, you may raise any issue including discrimination. You shall be deemed to have exercised your option at such time as you timely *initiate* an appeal or grievance under one of these procedures. That choice is irrevocable.

(Emphasis Supplied)

Following receipt of Witherspoon's letter, Huey, acting through his union as his representative, initiated a grievance appeal on September 19, 1983, for arbitration under the grievance procedure in the National Agreement by depositing an appeal letter on that date in the United States Post Office.

The grievance appeal was heard by arbitrator Preston J. Moore on November 12, 1984. At the hearing, the agency contended that the arbitrator did not have jurisdiction of the appeal. It advanced two theories to support this argument. First, that the grievance was a "union grievance" and not a "personal grievance," which could not be used for Huey's appeal. However, this issue was not appealed and is not before us for consideration or decision. Secondly, the agency contended before the arbitrator, and now contends before us on this appeal, that Huey's appeal from the agency suspension decision to the arbitrator was not timely filed. This is the sole issue to be decided by us in this case. To support this theory, the agency invoked Article 23, Section 6(2) of the National Agreement, which provides in pertinent part:

> Section 6—Removal, Suspension for More Than 14 Days, Reduction-in-Grade, Reduction-in-Pay, and Furlough of 30 Days or Less
>
> 2. . . .

The employee may appeal the decision to the Merit Systems Protection Board or, the employee may file a written grievance under the terms of this agreement. Any such grievance will be initiated at the final prearbitration step.

The choice of the appeal forum is irrevocable. An employee shall be deemed to have exercised his/her option at such time as the employee timely *initiates* an action under the statutory procedures, or timely files a written grievance at the final prearbitration step, whichever occurs first. Any grievance must be *initiated* no later than 20 days after the effective date of the action.

(Emphasis Supplied)

As pointed out above, the effective date of the suspension was August 30, 1983. Accordingly, compliance with Section 6(2) required the appeal to be filed no later than September 19, 1983, which was 20 days after the effective date of the action. The evidence showed that the appeal was sent to the arbitrator by certified United States mail, return receipt requested, on September 19, 1983, and the return receipt was issued and dated September 21, 1983. These facts were proven by the agency by the introduction of the transmittal envelope and the return receipt into evidence as an exhibit before the arbitrator. The exhibit showed the envelope to be properly addressed and stamped, with the post office mailing stamp of September 19, 1983, and certified mailing no. P266542143 appearing prominently thereon.

The agency contended before the arbitrator that the filing date was September 21, 1983, the date the appeal letter was received, and not September 19, 1983, the date the letter was mailed, which resulted in the appeal being filed more than 20 days after the effective date of the action, thereby depriving the arbitrator of jurisdiction. The same argument is made here by the agency. To support this contention, the agency cites Article 24, Section 7(B) of the National Agreement which provides:

B. Proof of service shall be a return post office receipt executed by the person served; or a written acknowledgement from the person served when hand delivered.

The agency says that this provision establishes the filing date of the grievance appeal in this case as September 21, 1983, the date the return post office receipt was executed by the person served. The arbitrator agreed with the agency and held that the parties agreed to use the receipt date on the certified mail. We disagree. The arbitrator also found that "there is no evidence in the instant case that the grievance was postmarked by September 20, 1983." This finding is contrary to the undisputed evidence and is unsupported by substantial evidence.

The arbitrator held that the grievance was untimely filed on September 21, 1983, instead of September 19, 1983, the date it was mailed. He stated that "Article 24, Section 7, of the National Agreement is unambiguous and spells out specifically that the proof of service shall be a return post office receipt." He then contradicts this statement by saying "The arbitrator does not accept that such receipt constitutes the determining factor in time limits," and "Such does not state that that constitutes the determining factor in the time limits." Nevertheless, he interpreted the National Agreement as providing that the date of the return post office receipt (September 21, 1983) was the date of filing of the arbitration grievance appeal, and dismissed it for being untimely filed.

It is well settled that the interpretation of an agreement is for the court. *Dynamics Corporation of America v. United States*, 389 F.2d 424, 429, 182 Ct.Cl. 62 (1968), and cases cited. We have carefully examined the National Agreement and have concluded that the arbitrator's interpretation of its provisions is not correct. In the first place, the agreement is silent as to the date of filing when a grievance appeal is sent by mail. The provision of Article 24, Section 7(B) that the proof of service shall be a post office receipt is merely a method of proving that the grievance appeal was actually received by the

addressee, regardless of the date placed thereon by the post office or by the addressee. There may be a difference between the date of filing and the date of service, which was the case here. The arbitrator was correct when he said that Section 7(B) does not state that the return receipt "constitutes the determining factor in the time limits." Actually, it does not mention a filing date. In our opinion, it does not determine nor fix the date of filing.

Huey argues that September 19, 1983, the date the grievance appeal was deposited in the United States mail, was the date of filing, which was the 20th day after the effective date of the suspension, and, therefore, timely filed. Article 23, Section 6(2), quoted above, provides that a grievance must be "initiated" no later than 20 days after the effective date of the action. The suspension letter from Witherspoon to Huey stated twice that any appeal by Huey must be "initiated" within 20 days. We conclude that when Huey deposited his appeal letter in the post office on September 19, 1983, he initiated or began his appeal, and that was the date of filing, which was timely and in compliance with Article 23, Section 6(2) of the National Agreement.

Furthermore, the National Agreement provides that an employee may appeal an adverse decision to the Merit Systems Protection Board (MSPB) or file a written grievance, but not both. The choice is irrevocable, and is deemed to have been made when the employee files his written grievance. Under these provisions, when Huey deposited his grievance in the post office on September 19, 1983, which was never withdrawn nor recalled prior to delivery, he exercised his option to proceed through arbitration and could not thereafter appeal to the MSPB. This is so, because when he deposited his grievance letter in the post office, he not only exercised his option for arbitration, but also filed his appeal.

In the interpretation of a contract, the intention of the parties is an important item to be considered by the court. *Dynamics Corporation of America v. United States, supra.* The National Agreement in the instant case was drafted by negotiators of both parties. There is no direct or positive evidence in the record as to their intent with respect to what constitutes the filing date of an arbitration appeal. Huey alleges that indirect or circumstantial evidence of such intent was related by Mr. Arthur B. Johnson, one of the negotiators for the Union, who testified that Section 7(B) of Article 24 of the National Agreement was derived from the regulations set forth in 5 C.F.R. Chapter XIV, Section 2429.12(a)(b) and (c) of the rules of the Federal Labor Relations Authority (FLRA) and 5 C.F.R. Section 1201.22(b) of the rules of the Merit Systems Protection Board. The FLRA regulations specify that "when service is by mail, the date of service shall be the day when the matter served is deposited in the United States mail." The MSPB regulations specify that "the date of filing an appeal shall be determined by the date of mailing indicated by the postmark date."

It is clear that if Huey had appealed to the MSPB, the filing date of his appeal would have been the postmark date on the transmittal envelope. It is neither reasonable nor logical to assume that the negotiators intended to fix a different date as the filing date for an arbitration appeal.* In our opinion, the National Agreement cannot be so interpreted. We conclude that the negotiators intended that the date of filing for both arbitration and MSPB appeals, when sent by mail, would be determined by the date of mailing indicated by the postmark date on the transmittal envelopes.

We hold that Huey filed his grievance appeal on September 19, 1983, when he deposited it in the United States mail, and that such filing was timely and conferred jurisdiction of the appeal on the arbitrator.

---

* In *Cornelius v. Nutt,* ____ U.S. ____, ____, 105 S.Ct. 2882, 2889, 86 L.Ed.2d 515 (1985), the Supreme Court stated: "Congress clearly intended that an arbitrator would apply the same substantive rules as the Board does in reviewing an agency disciplinary decision."

The arbitrator committed error in ruling otherwise.

The decision of the arbitrator is *reversed* and the case is *remanded* for a hearing on the merits.

REVERSED AND REMANDED.