# United States Court of Appeals for the Federal Circuit

04-3271

ANIBAL CRUZ-MARTINEZ,

Petitioner,

v.

DEPARTMENT OF HOMELAND SECURITY

Respondent.

Anibal Cruz-Martinez, of Carolina, Puerto Rico, pro se.

Doris Finnerman, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With her on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and William F. Ryan, Assistant Director.

Appealed from: The Arbitrator

# United States Court of Appeals for the Federal Circuit

04-3271

ANIBAL CRUZ-MARTINEZ,

Petitioner,

v.

DEPARTMENT OF HOMELAND SECURITY,

Respondent.

_____

DECIDED:  June 7, 2005

_____

Before NEWMAN, BRYSON, and PROST, <u>Circuit Judges</u>.

PROST, <u>Circuit Judge</u>.

Anibal Cruz-Martinez ("Cruz-Martinez") petitions for review of an arbitrator's decision that his grievance over his removal from the United States Department of Homeland Security ("DHS" or "agency")[1] was not arbitrable.  <u>In the Matter of Arbitration Between AFGE Local 2698 and United States Dep't of Homeland Sec. Re: Anibal Cruz-Martinez</u>, (Mar. 14, 2004) (Zigman, Arb.) ("<u>Cruz-Martinez</u>").  The arbitrator found that a past practice of closing arbitration cases after one year of inactivity barred consideration of this case on its merits.  Cruz-Martinez argues that the arbitrator's findings were not

---

[1]  The government agency involved in this case was known as the Immigration and Naturalization Service ("INS") at all times material to this action. However, on March 1, 2003, when the DHS was created, the INS's title changed and it became an entity within the DHS.  In this opinion, we use DHS when discussing the former INS as well.

supported by substantial evidence or in accordance with law, or in the alternative, violated the Due Process Clause of the Fifth Amendment. The DHS responds that the arbitrator's findings regarding a past practice were supported by substantial evidence and by the law, and that the American Federation of Government Employees Local 2698's ("the union's") acquiescence in this past practice was specifically shown in this action, where it failed to advance the arbitration proceeding for nearly an additional fifteen months after receiving the agency's one-year close-out letter. We affirm.

## I. BACKGROUND

On September 29, 2000, the agency issued a proposal to remove Cruz-Martinez from his position as a Special Agent for the agency for conduct unbecoming an officer of the service, improper admission of aliens, failure to follow the instructions of a supervisor, and for improper release of sensitive information. Cruz-Martinez at 2. Cruz-Martinez responded in a written reply on November 8, 2000, and in an oral reply on November 30, 2000. Id. Thereafter, the agency advised Cruz-Martinez by letter that he was being removed and that his removal was effective upon receipt of the letter. Id. The letter also explained Cruz-Martinez's right to contest his removal.

On April 12, 2001, the union notified the agency by letter that it was invoking arbitration as to the removal. Id. Subsequently, on May 14, 2001, the agency advised the union that it wished to schedule arbitration proceedings, but the union did not respond. Over thirteen months after the union's letter invoking arbitration, on May 29, 2002, the agency informed the union by letter that "[s]ince the Union is the moving party in this matter and has not acted on this case in over a year, the case is closed in accordance with past practice." Id. The letter further informed the union that it should

contact the agency "with any concerns." Almost fifteen months later, on August 15, 2003, the union responded for the first time, demanding that the agency schedule the grievance for arbitration. Id. The agency agreed to schedule the grievance, but maintained that the grievance was not arbitrable based on an established past practice that barred arbitrations that were not advanced for over a year. Id. at 2-3.

Before the arbitrator, the union maintained that the grievance was arbitrable because the union had fulfilled all of its obligations by invoking arbitration in conformance with relevant contractual provisions. The union further argued that there was no language in the collective bargaining agreement directing an arbitrator to dismiss the grievance under these circumstances, noting that the agency's "closeout" policy had been an issue in previous separate arbitrations. Id. at 10. Additionally, the union argued that it had challenged this policy in unfair labor charges filed with the Federal Labor Relations Authority ("FLRA") in 2000 and in 2001. Id. at 7.

The agency, on the other hand, maintained that the grievance was not arbitrable because the grievance case had been closed in accordance with the agency's long-standing past practice of closing out cases where the union has taken no action to advance the grievance to arbitration in over a year. Conceding that the parties' collective bargaining agreement was silent on any requirement regarding advancing grievances after arbitration has been invoked, the agency maintained the existence and consistent application of a long-standing practice beginning in the mid-1980s, supporting its position of a clear past practice with past arbitration awards, unrebutted testimony, and past close-out letters averaging twenty-five to thirty per year. Id. at 6-7. Acknowledging that the union did challenge the policy in 2000 and 2001 in its filing of

two unfair labor practice charges with the FLRA, the agency noted that the FLRA dismissed the charges on the basis that the practice of closing out cases existed well before the filing of the charges and thus those charges before the FLRA were themselves untimely. Id. at 7. The agency further relied on the union's conduct with respect to this case, pointing out that it took the union almost fifteen months to object or respond to the agency's notification that it was closing this case after one year of inaction. Id.

After hearing the evidence and argument from both sides, the arbitrator held that the grievance was not arbitrable. First, the arbitrator found that the agency had clearly and consistently implemented a "closeout" policy since the mid-1980s, finding that the "[a]gency dismissed such grievances for over 17 years while averaging between approximately 25 and 30 dismissals each year." Id. at 14.

Second, the arbitrator found that the union clearly had notice of the agency's close-out policy, noting that "[t]he evidence is also undisputed that the Agency regularly and routinely notified the local unions of its decisions dismissing these grievances under the closeout policy." Id. Thus the arbitrator concluded that "there is no doubt that the union and its various local unions in the Eastern District were aware of this policy." Id.

Third, the arbitrator found that the union by its action or inaction over this period assented to the agency's close-out policy. Hence, the arbitrator rejected the union's argument that it objected to the agency's practice of dismissing cases that were abandoned for over a year, relying on the evidence regarding case processing since the mid-1980s, including this one. The arbitrator noted that "there was no evidence, in this record, other than counsel's statements that the union objected to the dismissal of this

grievance until counsel's request/demand that the grievance be scheduled for arbitration—14 months after the case had been closed out." Id. at 15. Additionally, the arbitrator relied on the fact that the union offered no evidence of "having successfully grieved this issue to arbitration again weakened the union's assertions that it has repeatedly objected to these dismissals." Id. at 14. According to the arbitrator,

> the union's consent is implied by the fact that essentially none of the local unions nor the union's Eastern Regional formally or successfully protested these actions through the grievance procedure; that the two protests to the FLRA were denied; and that, in this record, there was no demonstration that the union ever filed any other formal grievance specifically challenging the 'close-out' policy or that the policy was ever found to be in violation of the collective bargaining agreement, at least up until this grievance, some 17 years after the fact.

Id. at 16; see also id. at 15 (finding that "the FLRA declined to issue complaint concluding that the close-out policy had been in existence for some time"). In sum, the arbitrator held that the weight of the evidence supported the agency's position regarding a binding past practice, and the union offered no substantial evidence to rebut it. This petition for review ensued.

We have jurisdiction to review arbitration decisions regarding removal from federal service under 5 U.S.C. § 7121(f).

## II. DISCUSSION

### A. Standard of Review

This court reviews decisions of an arbitrator under the same standard of review as decisions of the Merit Systems Protection Board. It is a deferential standard, requiring the Federal Circuit to affirm the decision of the arbitrator unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2)

obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2000).

## B. Analysis

On appeal, Cruz-Martinez raises four issues. First, he argues that "the record does not support the arbitrator's reasoning" because the testimony by the witness for the agency was "false and misleading" and that none of the past cases "verified an Agency closeout policy." Second, Cruz-Martinez argues that the arbitrator misapplied the standard for demonstrating past practice, stating that

> [t]o demonstrate a past practice, the party asserting it must demonstrate that it continued for a long period of time and that the other side did nothing to attempt to halt it. In addition, the Agency must demonstrate the practice was occurring in the local workplace where they claim the practice existed.

Cruz-Martinez argues that the agency only sent one letter to the local union in San Juan, which he argues was the "single letter concerning this case." Third, Cruz-Martinez argues that any past practice was invalidated by a provision in the collective bargaining agreement. Specifically, Cruz-Martinez argues that Article 48 of the agreement invalidated the past practice because it "gives the union the right to take a grievance forward to arbitration, provided the grievance and the invocation of arbitration is [sic] done timely."

Finally, Cruz-Martinez argues that the arbitrator should have applied the Due Process Clause of the Fifth Amendment. Cruz-Martinez states that "[a] federal employee covered by a collective bargaining agreement that allows for grievances to be arbitrated has a fifth amendment right against the taking of property without due process of law." Cruz-Martinez contends that his right was violated when the arbitrator "failed to

issue a decision on the merits and instead ruled that the case was inarbitrable [sic] due to an agency past practice of a closeout policy." Cruz-Martinez further argues that because the past practice violates the Due Process Clause of the Fifth Amendment, it is not binding.

The agency first responds that the arbitrator's decision was supported by substantial evidence. Specifically, it notes that the testimony regarding the past practice of closing out cases that were abandoned for more than one year was unrebutted; that the testimony was corroborated by past arbitration awards; and that it is undisputed that the agency sent out twenty-five to thirty close-out letters to the union every year and that the union did not respond to any of them. This evidence, according to the agency, supports the arbitrator's finding that a past practice existed of closing cases that were abandoned for over a year. Second, the agency responds that "[p]ast practices are existing practices sanctioned by use and acceptance." The agency argues that Cruz-Martinez offers no support for the proposition that the agency had to demonstrate that the practice existed in San Juan where the arbitrator found the practice existed in the Eastern Region and it is undisputed that Cruz-Martinez worked in the Eastern Region. Third, the agency responds that there are no provisions in the agreement that address the issue of abandoned cases, noting in an independent argument that past practice may override an agreement, in any event. The agency therefore argues that the past practice is not inconsistent with the agreement, and that furthermore, even if it was, Cruz-Martinez's contention that a contractual agreement always supersedes an established past practice is meritless.

Finally, the agency responds that the Due Process Clause as applied by either the Fifth or the Fourteenth Amendments of the Constitution is not implicated in this case because Cruz-Martinez was not denied "an opportunity" to adjudicate his claim on its merits, but instead "slept on his rights" by abandoning the case for over a year. The agency notes that "where reasonable procedural requirements, such as statutes of limitation, are imposed for triggering the right to an adjudication," those requirements do not violate the Due Process Clause. Therefore, there was no violation of his Due Process rights and "Cruz-Martinez had an opportunity to pursue his claim."

Clear and long-standing practices of the parties—in other words, "past practices"—can establish terms of the agreement that are as binding as any specific written provision. As the Supreme Court has stated, "[t]he labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it." United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 581-82 (1960). Generally, factors relevant to a finding of a binding past practice are the duration and consistency of its application and the parties' acquiescence in it. Therefore, as a preliminary matter, we note that the arbitrator evaluated the duration of the agency's close-out policy and the union's acquiescence in this policy, and conclude that the arbitrator considered the correct criteria in analyzing whether a binding past practice of closing out cases after one year existed. We further conclude that the arbitrator's finding that each of the factors had been met was supported by substantial evidence. The arbitrator's reliance on the sixteen years of the union's acquiescence in the past practice is substantial evidence

supporting the arbitrator's decision. Moreover, we find that the union's filing of two unfair labor charges with the FLRA, where those charges were dismissed, is not sufficient to preclude the arbitrator's finding of a binding past practice here.

Cruz-Martinez's related argument that the plain meaning of the agreement precludes the consideration of extrinsic evidence to show a contrary binding past practice has been rejected by the Uniform Commercial Code and the Restatement (Second) of Contracts. U.C.C. § 2-202 cmt. 1(b) (1998) (rejecting the premise that there is a plain meaning, or a "meaning attributable to such language by rules of construction existing in the law rather than the meaning which arises out of the commercial context in which it was used"); Restatement (Second) of Contracts § 212, cmt. b (1981) (making admissible extrinsic evidence because "meaning can almost never be plain except in a context"); Carlton J. Snow, Contract Interpretation: The Plain Meaning Rule in Labor Arbitration, 55 Fordham L. Rev. 681, 682 (1987). We find that the arbitrator was correct that, on the facts in this case, the collective bargaining agreement does not preclude the consideration of extrinsic evidence to show a binding past practice. This is particularly the case here where the past practice does not contradict any written provision in the collective bargaining agreement, but simply defines the course of dealing between the parties in an area where the contract is silent, i.e., the past practice fills a gap in the contract.

Further, we also reject Cruz-Martinez's argument, which he appears to raise for the first time on appeal, that the Due Process Clause of the Fifth Amendment is implicated by a binding past practice that bars a claim as not arbitrable for untimeliness. Under Cruz-Martinez's reasoning, nothing short of a constitutional amendment could

bar cases from being heard on the merits for untimeliness. The Supreme Court has stated, however, that "[t]he State may erect reasonable procedural requirements for triggering the right to an adjudication, be they statutes of limitation, or, in an appropriate case, filing fees. And the State certainly accords <u>due</u> process when it terminates a claim for failure to comply with a reasonable procedural or evidentiary rule." <u>Logan v. Zimmerman Brush Co.</u>, 455 U.S. 422, 437 (1982) (citations omitted). We thus find that the arbitrator's decision that a binding past practice bars this action from being arbitrable on the merits does not implicate the Due Process Clause.

Finally, less than three weeks before this case was scheduled to be heard on the briefs, Cruz-Martinez submitted a two-page "Supplement To Petitioner's Reply Brief." There, he argued for the first time that <u>Gunn v. Veterans Administration Medical Center</u>, which held that abandonment requires a showing of (1) inexcusable delay on the part of the union and (2) prejudice to the union, applied to his case. 892 F.2d 1036, 1039 (Fed. Cir. 1990). Accordingly, that case and the principles enumerated therein were not considered or discussed by either the arbitrator in his opinion or the government in its brief on appeal.

Even if this argument were properly before this court, we would reject it. In <u>Gunn</u>, the union timely invoked arbitration and a month later the parties met and selected an arbitrator for the grievance at hand. <u>Gunn</u>, 892 F.2d at 1036. The arbitrator sent a letter to both parties, proposing several dates for a hearing. <u>Gunn</u>, 892 F.2d at 1036-37. After not receiving any response from either party, the arbitrator contacted both parties six months later to determine the status of the case. <u>Gunn</u>, 892 F.2d at 1037. Thereafter, the parties scheduled a hearing, but at the hearing the agency

maintained for the first time that the grievance was not arbitrable for two reasons: (1) the union's delay in selecting an arbitrator was outside the time allowed by the collective bargaining agreement; and (2) the union's delay in scheduling a hearing date was sufficiently long to establish abandonment. Id. The arbitrator agreed with the agency that the grievance was not arbitrable, but this court reversed and remanded the case. Gunn, 892 F.2d at 1040. As to the first ground, this court found that the agency did not make a "timely objection" and "the Union was clearly prejudiced by a surprise defense." Gunn, 892 F.2d at 1039. This court held that "[o]n this record, we are compelled to conclude that, if the parties did not actually agree to the delay in selection, the government at least waived any objection." Id. As to the second ground for finding nonarbitrability, this court held that there was not sufficient evidence to support the arbitrator's finding of unreasonable delay and prejudice, which the government agreed were necessary to sustain a defense of abandonment. Id.

In contrast to the circumstances in Gunn, the agency does not argue abandonment here, but instead relies on a binding past practice which it argues, and the arbitrator agreed, allowed the agency to close this case after one year of inaction. Thus, Gunn does not apply in this case. Whether abandonment, which requires a finding of unreasonable delay and prejudice, can be shown as a separate and independent theory for barring this action is not before us. Instead, a past practice, like a regulation, statute, or contractual provision, is the binding restriction which bars this action from being arbitrable in this instance. Hence, because we affirm the arbitrator's finding of a binding past practice, we need not address the question dealt with in Gunn

04-3271                                           11

of whether the union also abandoned the grievance. We thus conclude that even if the argument based on <u>Gunn</u> were properly before us, it does not apply in this case.

## III.  CONCLUSION

For the foregoing reasons, we affirm the decision by the arbitrator.

<u>AFFIRMED</u>