NOTE: This disposition is nonprecedential

# United States Court of Appeals for the Federal Circuit

---

**TYLER J. STEVENS,**
*Petitioner,*

v.

**DEPARTMENT OF THE AIR FORCE,**
*Respondent.*

---

2010-3053

---

Petition for review of the Merit Systems Protection Board in case no. DE0752090207-I-1.

---

Decided: September 14, 2010

---

TYLER J. STEVENS, of Ogden, Utah, pro se.

ANTHONY W. MOSES, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and ALAN J. LO RE, Assistant Director. Of counsel was ROGER A. HIPP, Trail Attorney.

---

Before RADER, *Chief Judge*, LINN, and DYK, *Circuit Judges*.

PER CURIAM.

Tyler J. Stevens ("Stevens") petitions for review of a decision of the Merit Systems Protection Board ("Board"). The Board affirmed a decision by the Department of the Air Force ("the agency") to remove Stevens from his position as an F-16 Fighter Aircraft Pneudraulic Systems Mechanic on the grounds of "unauthorized absence," "failure to request leave in accordance with IAW established procedures," and "discourteous conduct." *See Stevens v. Dep't of the Air Force*, No. DE-0752090207-I-1 (M.S.P.B. October 8, 2009) ("*Final Decision*"). We *affirm*.

I

Stevens began working as an Aircraft Pneudraulic Systems Mechanic on June 1, 2004. In August 2007, Stevens received a written counseling statement from the agency concerning misuse of sick leave and failure to follow proper leave procedures, and he was told that in the future he would be identified as absent without leave ("AWOL") if he did not have sufficient leave or failed to follow leave procedures. He was also suspended for five days in October 2008 for "discourteous conduct," "unauthorized absence," and "disregard of directives." Resp't's app'x 77.

Thereafter, the agency determined that Stevens was absent without leave or authorization nine times from November 3 to December 3, 2008 for a total of 24 hours. The agency also determined that Stevens failed to request leave in accordance with established procedures. The agency determined as well that Stevens had engaged in discourteous conduct. On November 26, 2008, Stevens arrived at work half an hour late. When he arrived, Dave

Hemmers, authorized by Stevens' supervisor to receive leave requests, asked Stevens what type of leave he wanted. Stevens replied, "fuck around time." *See Stevens v. Dep't of the Air Force*, No. DE-0752090207-I-1, slip op. at 8 (M.S.P.B. July 7, 2009) ("*Initial Decision*"). According to Hemmers, Stevens also conveyed a "bad attitude." *Id.*

On January 6, 2009, Brent Wilson ("Wilson"), Stevens' supervisor, issued Stevens a notice of proposed removal, *inter alia*, on the grounds of Stevens' authorized absences, failure to properly request leave, and discourteous conduct. Leroy Sykes, the F-16 Production Chief, sustained the proposed removal on March 2, 2009. On March 9, 2009, Stevens appealed to the Board, and an Administrative Judge ("AJ") held a hearing on May 26-27, 2009. Stevens argued that he was never given proper notice of the agency's leave-requesting procedures and that he was never specifically told that he would be marked AWOL or subjected to discipline for failure to follow leave procedures. Stevens also claimed harmful procedural error due to the agency's failure to "effect disciplinary actions within . . . 45 days of the offense" under the Master Labor Agreement ("MLA") between the agency and the International Association of Machinists and Aerospace Workers ("IAW"). Resp't's app'x 53. Finally, Stevens asserted the penalty of removal was too severe.

The AJ sustained Stevens' removal based on unauthorized absence, failure to follow leave procedures, and discourteous conduct. *See Initial Decision*, slip op. at 14-18.[1] The full Board denied Stevens' petition for review to the Board, making the initial decision by the AJ the

---

[1]    Stevens had also been charged with disregard of directives and insubordination. The AJ determined the agency failed to prove the charges of disregard of directives and insubordination.

Board's final decision. Stevens timely appealed to this court, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## II

The scope of our review of an MSPB decision is narrow. We must sustain the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; [or] (3) unsupported by substantial evidence." *Jacobs v. Dep't of Justice*, 35 F.3d 1543, 1545 (Fed. Cir. 1994).

First, we reject Stevens' procedural error claim. Section 5.01 of the MLA between the agency and IAW states:

> [T]he Employer will *strive to effect disciplinary action within either 45 days of the offense*, the Employer's awareness of the offense, or the completion of an investigation of the matter by other than the supervisor, whichever occurs later. *If, for reasons of significantly changed circumstances, further delay in taking the action is anticipated*, a notice from the Employer to the employee advising that disciplinary action is being considered, the general basis of the action, and that the employee will be informed when a decision has been made satisfies the requirements of this section.

Resp't's app'x 53 (emphasis added).

We see no error in the Board's determination that this provision articulated a goal, rather than a mandatory time limit. *See Initial Decision*, slip op. at 11. We agree that, because no language in the agreement "specif[ies] a consequence for noncompliance," it is "best read as a

housekeeping requirement that is not judicially enforceable." *See Timken U.S. Corp. v. United States*, 421 F.3d 1350, 1357 (Fed. Cir. 2005) (internal quotation omitted). There is, moreover, no suggestion that the error, even if it existed, was harmful. The Board defines harmful error as one that "is likely to have caused the agency to reach a conclusion different from the one reached." 5 C.F.R § 1201.56(c)(3). Here there has been no such showing. Courts are "reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action." *Timken*, 421 F.3d at 1357. Therefore, the Board correctly rejected Stevens' harmful procedural error claim.

We also reject Stevens' claim that he had inadequate notice of the charges. As the Board noted here, "[a]gencies may take disciplinary action against an employee . . . provided the employee is clearly on notice of such requirements and the likelihood of discipline for continued failure to comply." *Initial Decision*, slip op. at 3. Stevens asserts that the Board improperly required him to establish lack of knowledge and that, under the proper allocation of the burden of proof, he cannot properly be charged because he never received notice of proper leave procedures; believed that he would receive Leave Without Pay ("LWOP") instead of being marked AWOL; and was never informed he would be subject to discipline. However, the Board did not improperly place the burden of proof on Stevens, and the Board's decision is supported by substantial evidence. The MLA specified procedures that employees were required to follow in requesting leave. The procedures stated that, to request unscheduled annual or sick leave, employees should call their immediate supervisor at the beginning of their shift or "no later than two hours after the shift begins." *Initial Decision*, slip op. at 5. The Board "found credible Wilson's

testimony that he explained the MLA leave provisions . . . and advised [Stevens] repeatedly to call and request leave if he was going to be late," and it found Stevens' claim that "Wilson never counseled him that he needed to call and request leave" to be "inherently improbable." *Id.* at 7. Similarly, the Board disbelieved Stevens' claim that he was never told that he could be charged AWOL and that it was permissible to arrive as much as two hours late for work.

The Board's credibility determinations are virtually unreviewable, *see Pope v. U.S. Postal Serv.*, 114 F.3d 1144, 1149 (Fed. Cir. 1997), and we see no basis to review them here. We are not in a position to reevaluate the Board's "credibility determinations which are not inherently improbable or discredited by undisputed fact." *Id.* While, as Stevens pointed out, Wilson may have been uncertain as to whether in each case he advised Stevens after the fact that his absences were unauthorized, Wilson was clear that he had advised Stevens in advance of the leave request procedures and the consequences of the failure to follow them.

Similarly, with respect to the "discourteous conduct" charge, Mr. Hemmers testified that Stevens had displayed a discourteous and "bad attitude," and the Board credited his testimony. *Initial Decision*, slip op. at 8-9. Because we cannot reevaluate "credibility determinations" that are "not inherently improbable or discredited by undisputed fact," we accept the Board's finding. *See Pope*, 114 F.3d at 1149. Hence, the Board had substantial evidence to sustain the unauthorized absence, failure to request leave, and discourteous conduct charges.

Lastly, we reject Stevens' argument that removal was not a reasonable penalty for his alleged misconduct because the agency had not used "progressive discipline" or

allowed him to show his potential for rehabilitation. *See Initial Decision*, slip op. at 13-14. The Board examined the relevant factors under *Douglas v. Veterans Administration*, 5 M.S.P.R. 280 (1991). Although Stevens had a successful performance record and almost five years of service, the Board found "particularly aggravating the repeated nature of [Stevens'] misconduct . . . the disruption to work schedules and work place morale caused by [his] repeated failure to report to work when scheduled," and his "prior discipline," which demonstrated a "lack of potential for rehabilitation." *Initial Decision*, slip op. at 13, 12. The Board considered Stevens' argument that the agency had failed to utilize "progressive discipline," but found that his actions "evidenc[ed] a pattern of flagrantly violating rules and regulations," showing that progressive discipline was not required. *Initial Opinion*, slip op. at 14, 13. We see no error in the Board's decision to sustain the penalty of removal.

## AFFIRMED

COSTS

No costs.