# United States Court of Appeals for the Federal Circuit

---

**RAYMOND MULLER,**
*Petitioner*

**v.**

**GOVERNMENT PRINTING OFFICE,**
*Respondent*

---

2015-3032

---

Petition for review of an arbitrator's decision in Case No. 14-54839 by Arbitrator Marvin J. Feldman.

---

Decided: January 15, 2016

---

JOHNNIE ALLEN LANDON, JR., Johnnie Landon, Esquire, Washington, DC, argued for petitioner.

MELISSA M. DEVINE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by EMMA BOND, BENJAMIN C. MIZER, ROBERT E. KIRCHMAN, JR., REGINALD T. BLADES, JR.

---

Before PROST, *Chief Judge,* DYK, and STOLL, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* DYK.

Concurring opinion filed by *Chief Judge* PROST.

DYK, *Circuit Judge.*

Raymond Muller filed a grievance against his employer, the Government Printing Office, which was referred to an arbitrator pursuant to a collective bargaining agreement. The arbitrator dismissed the grievance as "not arbitrable," on the ground that a four-month deadline for holding a hearing, required by the agreement, had passed. We conclude that the arbitrator erred; the contractual provision does not require dismissal of the grievance in the event of noncompliance with the four-month deadline. The deadline is merely a nonbinding housekeeping rule to encourage timely arbitration, one that is addressed to the arbitrator as well as the parties. There is no past practice requiring dismissal under the circumstances of this case. We accordingly reverse and remand with instructions to address Mr. Muller's grievance on the merits.

BACKGROUND

Mr. Muller is an employee of the U.S. Government Printing Office ("GPO" or "agency") and a member of the International Brotherhood of Teamsters, Local 713-S union ("union"), which belongs to the Joint Council of Unions. The Joint Council of Unions and GPO are signatories to a collective bargaining agreement, a multi-party Master Labor Management Agreement ("master agreement"), which creates a negotiated grievance procedure for GPO employees to contest adverse employment actions as an alternative to appeal to the Merit Systems Protection Board ("MSPB"). The master agreement specifies that resolution of adverse employment actions under the

negotiated procedure can proceed to arbitration if not resolved at the agency level.

Article VII of the master agreement sets forth various rules for the arbitration process. Section 10.d.(1) of the master agreement stipulates that, "[i]f the grievance is not resolved [at the agency level] . . . the union may inform the Director, Labor and Employee Relations Service of its decision to proceed to arbitration." J.A. 42. Arbitration must be invoked within 30 days: "This written statement must be submitted to the Director within 30 days after the decision of the Joint Grievance Committee" of agency and union officials. J.A. 42. Sections 10.d.(2) and (3) establish the rules of arbitrator selection, including the possibility that either the union or the agency may begin the arbitrator selection process and that the Federal Mediation and Conciliation Service ("FMCS") can step in if the process stalls. J.A. 42–43. Section 10.d.(4) states that "[t]he arbitration hearing will take place within 4 months after filing of the notice of decision to proceed to arbitration, unless the parties mutually agree to an extension of the time limit." J.A. 43. Section 11.e specifies that "[a]n arbitrator will render his decision as quickly as possible, but not later than 30 calendar days after the close of the record." J.A. 43.

Mr. Muller was reassigned between divisions of the GPO, resulting in demotion to a lower grade and a reduction in pay, an adverse employment action under 5 U.S.C. § 7512. Mr. Muller elected to challenge his reassignment through the negotiated grievance procedure, and, after proceeding through the steps of review required by the master agreement, the agency issued a decision denying the grievance. The union timely invoked arbitration on February 19, 2014, and requested and received a list of arbitrators from the FMCS on April 2, 2014. The union and the GPO jointly selected Marvin Feldman as arbitrator, and Mr. Feldman was notified of his selection on May

29, 2014. The arbitrator thus received the case approximately three weeks prior to June 19, 2014, the date on which the four-month deadline expired. The arbitrator wrote the union and the agency on June 9, 2014, to suggest the hearing be held July 23 or August 6, 2014.

On June 19, 2014, four months to the day from the date that arbitration had been invoked, the GPO wrote to the union and the arbitrator to ask that the arbitration be closed for failure to comply with the four-month deadline. The arbitrator requested briefs from both sides on the question of arbitrability and ultimately issued a decision on September 15, 2014, dismissing Mr. Muller's grievance as "not arbitrable," J.A. 7, because the master agreement "requires that the arbitration hearing take place within four months after filing of the notice of decision to proceed to arbitration, unless the parties mutually agree to an extension of that time limit," J.A. 5. The arbitrator concluded that noncompliance with the four-month hearing deadline automatically terminated the grievance but, at the same time, found that the union was primarily responsible for the delay. "[T]here is ample evidence in the record, although none is required contractually, that the union, not FMCS, was the direct and primary cause for the failure of the parties to meet the four-month requirement." J.A. 6.

Mr. Muller petitions for review, arguing that the arbitrator's decision to close arbitration and dismiss the grievance was arbitrary, capricious, and an abuse of discretion, and was not supported by substantial evidence. Mr. Muller requests that the arbitrator's decision be set aside. We have jurisdiction under 5 U.S.C. §§ 7121(f) and 7703(b)(1) and 28 U.S.C. § 1295(a)(9).

DISCUSSION

I

Under 5 U.S.C. § 7121(e)(1), part of the Civil Service Reform Act of 1978 ("CSRA"), a federal employee seeking to challenge disciplinary action by his employing agency may appeal his claim to the MSPB or, alternatively, take his claim to an independent arbitrator under a negotiated grievance procedure created by collective bargaining agreement.  The arbitrator's decision is reviewed by this court under 5 U.S.C. § 7121(f).  Section 7121(f) establishes that arbitrations of such grievances are reviewed under the same standard of review that applies to appeals from decisions of the MSPB.  The statute provides that, "[i]n matters covered under sections 4303 and 7512 of this title which have been raised under the negotiated grievance procedure in accordance with this section, section 7703 of this title . . . shall apply to the award of an arbitrator in the same manner and under the same conditions as if the matter had been decided by the Board." 5 U.S.C. § 7121(f); *see also Cornelius v. Nutt*, 472 U.S. 648, 661 n.16 (1985); *Newman v. Corrado*, 897 F.2d 1579, 1582 (Fed. Cir. 1990).  Mr. Muller's claim arises under § 7512, as it concerns a reduction in grade and a reduction in pay, so § 7703 applies here.  5 U.S.C. § 7512(3), (4).

Section 7703(c) requires this court to set aside "any agency action, findings, or conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see also Appleberry v. Dep't of Homeland Sec.*, 793 F.3d 1291, 1295 (Fed. Cir. 2015).  The standard of review under § 7703 differs from the standard that applies to arbitrations conducted under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, where an arbitrator's

decision can be set aside only under narrow circumstances, such as corruption or misconduct on the part of the arbitrator. 9 U.S.C. § 10(a); *see also Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584–85 (2008); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). This difference, with substantially less deference granted to arbitrations of the grievances of federal employees, is consistent with the purpose of the CSRA, which created arbitration defined by collective bargaining agreement as a parallel alternative to dispute resolution at the MSPB. "Congress clearly intended that an arbitrator would apply the same substantive rules as the Board does in reviewing an agency disciplinary decision." *Cornelius*, 472 U.S. at 660.

The CSRA makes clear that employees and their unions are obliged to invoke arbitration promptly, or their claims are forfeited. *See, e.g.*, 5 U.S.C. § 7121(e)(1) ("An employee shall be deemed to have exercised his option under this subsection to raise a matter . . . under the negotiated grievance procedure at such time as the employee . . . *timely* files a grievance in writing in accordance with the provisions of the parties' negotiated grievance procedure . . . .") (emphasis added). As the government points out, failure to comply with the deadline for invoking arbitration can result in dismissal of an employee's grievance. In *Appleberry*, we upheld an arbitrator's dismissal of a federal employee's claim because it "was not properly 'raised under the negotiated grievance procedure' in the first place," 793 F.3d at 1297, the employee having failed to invoke arbitration within 30 days of the agency's denial of her grievance, as required by the controlling collective bargaining agreement, *id*. at 1294.

However, the CSRA does not itself create any statutory timing requirements that apply after arbitration has been invoked. Instead, arbitration of grievances is allowed to proceed under a timetable and procedural rules

set by the governing collective bargaining agreement. We have noted that "[c]ourts should be careful not to 'judicialize' the arbitration process. Arbitration normally envisions that each case be decided on its own under the controlling contract . . . ." *Gonce v. Veterans Admin.*, 872 F.2d 995, 998 (Fed. Cir. 1989). "The collective bargaining agreement is the primary tool used in the arbitration process." *Gunn v. Veterans Admin.*, 892 F.2d 1036, 1038 (Fed. Cir. 1990). It is therefore up to the negotiating parties to impose any internal deadlines on the arbitration process.

## II

The government notes, correctly, that "collective bargaining agreements are . . . contracts governed by the rules of contract interpretation." Respondent's Brief at 12 (quoting *Muniz v. Newman*, 972 F.2d 1304, 1320 (Fed. Cir. 1992)). "Interpretation of a collective-bargaining agreement is a question of law we review de novo." *Garcia v. Dep't of Homeland Sec.*, 780 F.3d 1145, 1147 (Fed. Cir. 2015); *see also Huey v. Dep't of Health & Human Servs.*, 782 F.2d 1575, 1577 (Fed. Cir. 1986) ("It is well settled that the interpretation of a[] [collective bargaining] agreement is for the court."). We conclude that noncompliance with the four-month deadline in Section 10.d.(4) of Article VII of the master agreement does not require dismissal of the arbitration.

First, Section 10.d.(4) is not directed specifically to the union; it is not within the union's power to ensure compliance with the four-month deadline; and the provision does not specify dismissal as a sanction for failure to comply with the deadline. As an initial matter, the master agreement does establish at least one deadline that is clearly directed to, and binding on, the union. Consistent with 5 U.S.C. § 7121(e)(1), the master agreement creates a 30-day deadline for invoking arbitration via written

notice. Section 10.d.(1) of Article VII of the agreement specifies,

> If the grievance is not resolved at Step 3 or there is no response in the time limit set forth above, the union may inform the Director, Labor and Employee Relations Service of its decision to proceed to arbitration. This written statement must be submitted to the Director within 30 days after the decision of the Joint Grievance Committee.

J.A. 42.

However, subsequent arbitration steps recited in the master agreement either impose no deadlines or the deadlines (as with the four-month deadline) are not directed to the union alone. Sections 10.d.(2) and (3) of Article VII of the agreement, which follow Section 10.d.(1), establish the rules for selecting an arbitrator but do not include any time limits. J.A. 42–43. Section 10.d.(4) of Article VII next provides that, once an arbitrator has been selected, "[t]he arbitration hearing will take place within 4 months after filing of the notice of decision to proceed to arbitration, unless the parties mutually agree to an extension of the time limit." J.A. 43. This deadline is not directed solely to the union but to the parties collectively as well as to the arbitrator. Section 11.e of Article VII later provides that "[a]n arbitrator will render his decision as quickly as possible, but not later than 30 calendar days after the close of the record," a deadline directed to the arbitrator alone. J.A. 43.

The arbitrator found, and the government now argues, that the four-month hearing deadline of Section 10.d.(4) binds the union. However, the four-month deadline, which immediately follows the provisions of the master agreement concerning selection of the arbitrator, is clearly addressed to all three actors, not to the union alone. Section 10.d.(4) indicates that once an arbitrator

has been selected, pursuant to Section 10.d.(3), the arbitrator, union, and agency should work together to schedule a hearing. Unlike the 30-day deadline for invoking arbitration, compliance with which is entirely within the union's control, the union cannot unilaterally ensure that a hearing is held within four months. Indeed, under the arbitrator's approach, even delay occasioned entirely by the government would result in dismissal of an employee's grievance.

Both the four-month hearing deadline of Section 10.d.(4) and the 30-day arbitration decision deadline of Section 11.e are, on their face, provisions to encourage prompt handling of the grievance. Neither contractual provision stipulates any consequences for the union or the agency in the event of noncompliance with these deadlines, and indeed Section 10.d.(4) expressly contemplates the possibility of the parties' agreeing to extend the four-month deadline.

The government argues that, in fact, Section 9 of Article VII of the master agreement creates consequences for the union if the time limits of Section 10 are not met. Section 9 reads, in full,

> Expeditious Handling. The parties agree that they will handle grievances in an expeditious manner and abide by the time limits set forth in this agreement. If these time limits are not met, the grievance will move to the next step as provided in Section 10 of this Article.

J.A. 42. Section 9 adds precatory language encouraging the parties to proceed "in an expeditious manner and abide by the time limits," and states that failure to meet a deadline will result in the grievance moving to the next step. The only next step after a hearing is the decision by the arbitrator. It is nonsensical, and the government does

not argue, that failure to meet the four-month deadline should result in a decision without a hearing.

The government conceded at oral argument that the 30-day decision deadline of Section 11.e is merely a goal for the arbitrator, triggering no consequences for noncompliance, and that an arbitrator's delay in issuing a decision would not prejudice an employee's claim. The government, and the arbitrator's decision, offer no explanation why the four-month hearing deadline should be treated any differently. Neither deadline is within the union's unilateral control, and the master agreement specifies no consequences for noncompliance with either.

As the government notes, our court has upheld arbitrators' dismissals of employee grievances when the employee, or his union, failed to comply with internal deadlines imposed on him by the collective bargaining agreement, but in these cases the relevant contractual deadlines were specifically directed to the union. In *Gonce*, we affirmed an arbitrator's dismissal of two federal employees' claims because the union failed to comply with a requirement in the collective bargaining agreement that "the moving party . . . request the Federal Mediation and Conciliation Service to provide a list of seven (7) impartial persons to act as an arbitrator." 872 F.2d at 996 (alteration in original). The *Gonce* court noted that "it was the union's responsibility to request the panel of arbitrators 'on or after the date of the notice of arbitration' so as to secure 'prompt and equitable resolution of grievances,' but it waited seventeen months before it did." *Id.* at 999. *Gonce* noted further that the governing collective bargaining agreement specified "strict time limits on earlier steps of the grievance procedure no longer than forty-five days." *Id.*; *see also Gunn*, 892 F.2d at 1038 (assuming that noncompliance with an arbitrator selection deadline directed to the union (as moving party)

would have forfeited an employee's grievance, absent waiver by the agency).

In *Herrera v. Department of Homeland Security*, we upheld the MSPB's affirmance of an arbitrator's dismissal of an employee's grievance due to the union's noncompliance with an "obligation to cooperate promptly with the designated arbitrator in setting a date for a hearing" and "for failing to proceed with due diligence in setting a hearing date pursuant to the [collective bargaining agreement]." 498 F. App'x 35, 38 (Fed. Cir. 2012). In *Herrera*, the union asked for and received an extension of time to schedule an arbitration hearing date but then failed to respond by that extended deadline. *Id.* Unlike the master agreement at issue here, the controlling collective bargaining agreement in *Herrera* expressly provided that noncompliance with the arbitration timetable could lead to dismissal of the grievance: "Failure of either party to proceed with due diligence in responding to an offer of dates may serve as a basis for establishment of a hearing date by the arbitrator or dismissal of the grievance." *Id.*

The case at hand is similar to *Stevens v. Department of the Air Force.* 395 F. App'x 679 (Fed. Cir. 2010). In *Stevens*, a collective bargaining agreement governing resolution of Air Force employee grievances specified that the agency would "strive to effect disciplinary action within . . . 45 days of the offense" but defined no consequences for noncompliance. *Id.* at 681, 682. Our court affirmed a finding by the MSPB that the 45-day decision deadline merely "articulated a goal, rather than a mandatory time limit." *Id.* at 682. We concluded that such a deadline is "best read as a housekeeping requirement that is not judicially enforceable." *Id.* (quoting *Timken U.S. Corp. v. United States*, 421 F.3d 1350, 1357 (Fed. Cir. 2005)).

Here, as in *Stevens*, the deadline is a goal, not a requirement, and the master agreement specifies no consequence for failure to observe the four-month deadline. The provision is thus merely a housekeeping rule. Of course, the parties are free to contract into binding deadlines that guarantee prompt dispute resolution, if they so desire. But they did not. Here there is nothing in the text of the master agreement to indicate that the GPO or the union intended noncompliance with the four-month hearing deadline to lead to automatic dismissal of Mr. Muller's grievance.[1]

---

[1] The government suggests that without an automatic dismissal rule, there would be no way to prevent the union from unduly delaying the proceeding. However, other provisions of the master agreement operate to ensure diligence. First, as noted above, the union must invoke arbitration within 30 days of a decision by the Joint Grievance Committee or forfeit the grievance. Second, if the union were to invoke arbitration on time but fail to initiate arbitrator selection, the agreement specifies that the agency has the authority to do so. J.A. 42 (Section 10.d.(2)). Third, if the union were to fail to participate in the strike process for arbitrator selection, "the FMCS will be empowered to select" an arbitrator. J.A. 43 (Section 10.d.(3)). The FMCS has that power "[i]f either party refuses to take part in selecting an arbitrator." *Id.*

Moreover, an arbitrator, once selected, has inherent authority to create a timetable for arbitration and consequences for noncompliance therewith (limited, of course, by the precise terms of the controlling collective bargaining agreement). *See, e.g.*, *Uliano v. Ctrs. for Medicare & Medicaid Servs.*, 185 F. App'x 967, 970 (Fed. Cir. 2006) (affirming an arbitrator's dismissal of an agency employ-

There is therefore no basis in the text of the master agreement to support the arbitrator's conclusion that noncompliance with the four-month hearing deadline automatically invalidated Mr. Muller's claim. The arbitrator was wrong to conclude that "the plain language of the contractual provision" obliged him to terminate the arbitration. J.A. 7.

## III

Second, there is no past practice between the parties suggesting that the agreement should be interpreted to require dismissal for failure to comply with the deadline when the matter was submitted to the arbitrator in time for a hearing to be held within the four-month period. The arbitrator found, and the government now argues, that past practice of the GPO should lead to an interpretation of the master agreement under which failure to comply with the four-month deadline requires dismissal.

It is true that past practices can supplement a collective bargaining agreement. The Supreme Court has noted that "[t]he labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining

---

ee's grievance in view of the employee's failure to appear at an arbitration hearing and noting that "[t]he Supreme Court has recognized the inherent power of a decision maker to dismiss a case for failure to prosecute") (citing *Chambers v. NASCO*, 501 U.S. 32, 49 (1991)); *Forsythe Int'l, S.A. v. Gibbs Oil Co. of Tex.*, 915 F.2d 1017, 1023 n.8 (5th Cir. 1990) ("Arbitrators may, for example, devise appropriate sanctions for abuse of the arbitration process."); *cf.* 5 C.F.R. § 1201.43(b) (granting the MSPB authority to dismiss an appeal for failure to prosecute).

agreement although not expressed in it." *United Steel-workers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581–82 (1960); *see also Cruz-Martinez v. Dep't of Homeland Sec.*, 410 F.3d 1366, 1370 (Fed. Cir. 2005). In *Cruz-Martinez* we upheld an arbitrator's dismissal of an employee grievance because his union waited longer than a year after invoking arbitration to request an arbitrator and schedule a hearing, in violation of an established practice of the parties. 410 F.3d at 1367, 1372. We found that the past practice there created a binding, consequential deadline even in the absence of express language in the collective bargaining agreement. *Id.* at 1370. "Clear and long-standing practices of the parties—in other words, 'past practices'—can establish terms of the agreement that are as binding as any specific written provision." *Id.* "The arbitrator's reliance on the sixteen years of the union's acquiescence in the past practice is substantial evidence supporting the arbitrator's decision" to dismiss the employee's claim. *Id.*

The past practice evidence in the record here consists of eight letters from the GPO to the union dismissing grievances because no arbitration hearing had been held within four months of invocation of arbitration. In each of the letters, the agency sought to dismiss a grievance because the union had failed to select an arbitrator within the four-month window. The letters therefore evidence an established practice of closing arbitration when the union was not diligent in selecting an arbitrator before the four-month deadline.

Mr. Muller's situation is different. Even if the union were dilatory up to the point that the arbitrator was selected, there is no question that Mr. Muller's grievance was submitted to the arbitrator in sufficient time to schedule and conduct a hearing within four months. The GPO and the union jointly selected Mr. Feldman as arbitrator in April of 2014, and the union informed FMCS

of the selection on May 9. FMCS notified the arbitrator of his selection on May 29, three weeks prior to the four-month deadline of June 19, 2014. At oral argument, Mr. Muller's counsel indicated that the hearing would likely have taken a few days, and the government conceded that the hearing could have been held within the three week period. Unlike the eight letters cited by the government, here the union succeeded in getting the grievance into the arbitrator's hands within the four-month limit. At that point, under the terms of Section 10.d.(4), the duty to proceed diligently to hearing was not the union's alone but was instead shared among the arbitrator, the agency, and the union.

As the government conceded at argument, there is no evidence in the record of past practice germane to the situation here, where an arbitrator was timely selected and the case was in his hands comfortably before the four-month deadline. There is accordingly no basis in past practice to support dismissal of Mr. Muller's claim.

## IV

In view of the plain language of the master agreement and the absence of any pertinent past practice evidence, we find that the arbitrator's dismissal of Mr. Muller's claim was contrary to the collective bargaining agreement. The case is remanded for a determination of the merits of Mr. Muller's grievance. Given that Mr. Feldman has withdrawn from the case for medical reasons, the parties must select a new arbitrator under the terms of their agreement.

**REVERSED AND REMANDED**

COSTS

Costs to petitioner.

# United States Court of Appeals
# for the Federal Circuit

---

**RAYMOND MULLER,**
*Petitioner*

**v.**

**GOVERNMENT PRINTING OFFICE,**
*Respondent*

---

2015-3032

---

Petition for review of an arbitrator's decision in No. 14-54839 by Marvin J. Feldman.

---

PROST, *Chief Judge*, concurring.

I join the majority opinion in the result based on the facts and circumstances of this case and in its reasoning with respect to Part III. I respectfully disagree, however, that in all circumstances, the provisions of the Master Labor Management Agreement ("master agreement") at issue should be construed as having no consequences for the parties here. I agree that in the absence of clear past practice, we must look to the text of the master agreement and surrounding circumstances to determine the consequences for failure to comply with the deadlines imposed by the master agreement.

As the majority notes, the master agreement does not explicitly provide that non-compliance with the deadlines

imposed in Section 10 could lead to the dismissal of the grievance. However, I respectfully disagree that in the absence of an established prior course of conduct, the lack of an explicit consequence for noncompliance requires that the deadline is a mere "housekeeping rule." Majority Op. at 12. Rather, we should look to the facts and circumstances surrounding the delay and the party or parties who may control compliance with the stated deadlines.

Here, the union was not the sole cause of delay. The grievance was submitted to the arbitrator in sufficient time to complete the hearing before the four month deadline in the master agreement. From the time the matter was submitted, scheduling was jointly controlled by the arbitrator, the agency, and the union. Because the union could not unilaterally ensure that the hearing took place in time under these circumstances, it should also not be penalized for the failure. However, in cases where the delay can be solely attributed to a single party, then it would be appropriate to enforce the deadlines present in the master agreement against the party responsible.

Accordingly, like the majority, I would reverse the arbitrator's decision and remand the case to address the merits, but on the basis that the union was not the sole cause for the delay.