NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**ROBENA G. REID,**
*Petitioner*

**v.**

**DEPARTMENT OF TRANSPORTATION,**
*Respondent*

_____

2021-1562

_____

Petition for review of an arbitrator's decision in No. 170916-54874 by Robert T. Simmelkjaer.

_____

Decided: December 16, 2021

_____

ROBENA G. REID, Lorton, VA, pro se.

ALISON VICKS, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BRIAN M. BOYNTON, DEBORAH ANN BYNUM, MARTIN F. HOCKEY, JR.

_____

Before NEWMAN, HUGHES, and STOLL, *Circuit Judges.*

PER CURIAM.

Robena Reid was removed from her economist position within the Department of Transportation (DOT). Ms. Reid challenged her removal before an arbitrator, who reinstated her on March 20, 2019. The DOT later reinstated Ms. Reid, but not to a comparable position. The arbitrator then issued an enforcement decision, ordering Ms. Reid's reinstatement to an appropriate economist position within the DOT. Ms. Reid petitions for review of the arbitrator's November 16, 2020 enforcement decision reinstating her to an appropriate economist position. Specifically, Ms. Reid argues that she must be placed in the exact position from which she was removed. Because her new proposed position is substantially equivalent to her previous position, we affirm.

BACKGROUND

Ms. Reid was a GS-13 Economist in the Office of Budget and Policy (TBP) at the Federal Transit Administration (FTA) within the DOT. In 2015 and 2016, the FTA twice proposed removal of Ms. Reid, but retracted its proposals both times due to procedural problems. On March 3, 2017, the FTA issued a third proposed removal notice to Ms. Reid based on the charge of conduct unbecoming a federal employee. Appx. 69.[1] Ms. Reid was removed on June 30, 2017. Appx. 2–3.

The American Federation of Government Employees, Local 3313 (Union), of which Ms. Reid's is a member, filed a grievance on her behalf challenging the removal on contractual and statutory grounds. On September 14, 2017, the Union filed a request for arbitration because the grievance was not resolved. Appx. 70. On March 20, 2019, the arbitrator ordered the removal reduced to a one-year suspension, "direct[ed] the [FTA] to reinstate [Ms. Reid] to a

---

[1]    "Appx." refers to the Appendix filed with the Respondent's brief.

position with her former job description and pay grade," and stated that the FTA "is free to select an appropriate position for [Ms. Reid], but it must be commensurate with her skills and experience." Appx. 121.

On November 5, 2019, the FTA notified Ms. Reid of her new assignment as a Transportation Program Analyst, GS-13, with FTA's Office of Transit Safety and Oversight (TSO). The notice of reinstatement explained that Ms. Reid's former GS-13 Economist position within TBP "was abolished due to reallocation of duties," but that the FTA had a need for economic analysis in TSO's Office of Program Oversight. Appx. 56. The FTA attached the description for the TSO position—Program Analyst—to the notice and clarified that the "focus and actual duties of the TSO position are substantially similar to that of [Ms. Reid's] former position involving financial economic analysis concerning public transit programs." *Id.* Ms. Reid retained the grade and pay of her former position.

The Union argued that the FTA failed to comply with the reinstatement order by placing Ms. Reid in a Program Analyst position and requested that the arbitrator grant its motion directing the FTA to place Ms. Reid in an Economist position. Appx. 3. The FTA asserted that it did not need a GS-13 Economist in Ms. Reid's former office because the position was abolished due to reallocation of duties across several positions. Appx. 3–4. The agency also contended that the position to which it reinstated Ms. Reid was substantially similar to Ms. Reid's former position because it required complex financial and economic analysis. *Id.* The FTA proposed creating a new GS-13 Economist position in TSO for Ms. Reid, but Ms. Reid argued that she should be returned to TBP as a GS-13 Economist.

In its November 16, 2020 decision, the arbitrator explained that the FTA "could avoid reinstating [Ms. Reid] to her former position only if it had a 'strong overriding

interest or compelling reason' for not doing so."
Appx. 10–11 (quoting *Bruton v. Dep't of Veterans Affs.*,
111 M.S.P.R. 489, 494 (2009)); *see also Hoover v. Dep't of
the Navy*, 57 M.S.P.R. 545 (1993). The arbitrator further
explained that the FTA's "arguments regarding its han-
dling of [Ms. Reid's] old position are so muddled and con-
tradictory that they cannot be credited" and found that the
FTA did not meet its burden to prove that the alleged lack
of need for Ms. Reid's prior duties constituted a compelling
reason for her placement in the Program Analyst position
in TSO. Appx. 16–17. The arbitrator concluded that the
assignment to the Program Analyst job in TSO did not com-
ply with his reinstatement award or precedent from the
Merit Systems Protection Board. Because the arbitrator's
award "requir[ed Ms. Reid's] placement in an Economist
position but not placement in the identical position she pre-
viously held," Appx. 21, he "conclude[d] that the proposed
GS-13 [Economist] position in TSO would also be con-
sistent with [his] prior [a]ward." Appx. 23. Ms. Reid peti-
tions for review of the arbitrator's decision. We have
jurisdiction under 5 U.S.C. § 7121(f).

## DISCUSSION

Under 5 U.S.C. § 7121(e)(1), a federal employee chal-
lenging disciplinary action by her employing agency may
appeal her claim to the Board or to an independent arbi-
trator under a negotiated grievance procedure created by a
collective bargaining agreement. *Muller v. Gov't Printing
Off.*, 809 F.3d 1375, 1378 (Fed. Cir. 2016). Section 7121(f)
provides that we may review an arbitrator's award only if
the matter appealed is covered under 5 U.S.C. § 4303 or
5 U.S.C. § 7512 (e.g., a removal decision), and that we re-
view the arbitrator's decision "in the same manner and un-
der the same conditions as if the matter had been decided
by the Board." We will uphold the arbitrator's decision un-
less it is (1) arbitrary, capricious, an abuse of discretion, or
otherwise not in accordance with law; (2) obtained without
procedures required by law, rule, or regulation having been

followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c).

We have explained that when an agency is directed to comply with an initial decision reinstating the employee, the purpose of the reinstatement is to place the employee "as nearly as possible in the *status quo ante.*" *Kerr v. Nat'l Endowment for the Arts*, 726 F.2d 730, 733 (Fed. Cir. 1984). "[A]ppropriate steps to enforce compliance must include more than the formal determination that an individual was reinstated to a position bearing the same title, grade, and pay." *Id.* The steps must also include a "substantive assessment" of the actual duties and responsibilities to which the employee returned to ensure they are either "the same as or substantially equivalent in scope and status to the duties and responsibilities . . . held prior to the wrongful discharge." *Id.* We have recognized that "in some cases appointment to the position at issue may not be possible because the particular position may have substantially changed or may no longer exist." *Marshall v. Dep't of Health & Hum. Servs.*, 587 F.3d 1310, 1317 (Fed. Cir. 2009). In instances where the previous position no longer exists, as is the case here, the agency must restore the employee as nearly as possible to the previously existing position given restoration would be impossible. *See id.*

Here, substantial evidence demonstrates that Ms. Reid's position was no longer available. Consistent with precedent, the FTA was obligated to restore her to a position as close as possible to her prior position. The FTA proposed an Economist position in the TSO, and the arbitrator found the position similar in duties and responsibilities to her prior position. The arbitrator correctly performed the requisite substantive assessment, comparing the duties of the TBP Economist position with that of the proposed new TSO Economist position to conclude that the proposed TSO Economist position was consistent with the initial award.

The arbitrator clarified that the initial award required Ms. Reid to be placed in a position with her former job description "to ensure that [Ms. Reid] was not only placed in an Economist position but also was assigned the duties and responsibilities commensurate with the [GS-13] Economist position that she previously held." Appx. 19–20. The arbitrator then explained that the TSO Economist job "would require economic expertise in the transportation industry" and that the position was "clearly an Economist job requiring an economist's skills." Appx. 22. We see no error in the arbitrator's assessment that the two positions are substantially equivalent and commensurate with Ms. Reid's skills and experience, and that appointment to the proposed TSO Economist position would be as close as possible to her prior TBP Economist position. This is so even though Ms. Reid's prior position focused on lending and financing policies, whereas the TSO position would focus on economic analysis of the FTA's oversight activities. Because we conclude that the FTA was not required to reinstate Ms. Reid to her exact same prior position to comply with the arbitrator's award—particularly where, as here, her exact same prior position no longer exists—and because Ms. Reid was offered a position the arbitrator found to be substantially equivalent to her prior position, we affirm.

## AFFIRMED

COSTS

No costs.