Steven GUNN and American Federation of Government Employees, AFL–CIO Local 2207, Petitioners,

v.

VETERANS ADMINISTRATION MEDICAL CENTER, BIRMINGHAM, ALABAMA, Respondent.

No. 89–3114.

United States Court of Appeals, Federal Circuit.

Jan. 3, 1990.

Stuart A. Kirsch, Staff Counsel, American Federation of Government Employees, AFL–CIO, College Park, Md., argued for petitioners. With him on the brief was Mark Roth.

Cheryl S. Rome, Atty., Commercial Litigation Branch, Dept. of Justice, of Washington, D.C., argued for respondent. With her on the brief were John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director and Helene Goldberg, Asst. Director.

Before MARKEY, Chief Judge, BENNETT, Senior Circuit Judge, and NIES, Circuit Judge.

NIES, Circuit Judge.

Steven Gunn and the American Federation of Government Employees, AFL–CIO Local 2207 (collectively, "petitioners") petition for review from the final decision of an arbitrator, FMCS No. 87–27337 (November 21, 1988) (Howell, Arb.), dismissing Gunn's grievance for lack of jurisdiction. We reverse and remand.

I

Steven Gunn, a member of the American Federation of Government Employees (AFGE, or the Union) was removed from his position in the Veteran's Administration Medical Center, Birmingham, Alabama, effective July 10, 1987. Gunn unsuccessfully grieved the matter in accordance with the master collective bargaining agreement (the agreement) between AFGE and the Veterans Administration (VA). The Union timely invoked arbitration and requested the Federal Mediation and Conciliation Service (FMCS) to supply a list of arbitrators. The FMCS sent the list to both AFGE and the VA by letter dated September 8, 1987. On October 26, 1987, the parties met and selected arbitrators for four cases, including Gunn's. The government made no objection at that time to the length of time which had passed before the arbitrator was selected.

Arbitrator Howell, who was selected in this case, sent a letter to both AFGE and the VA on November 13, 1987, proposing

several dates in December 1987 and January 1988 for a hearing, stating that he would reserve these dates for three weeks. Neither party responded. In May 1988, the arbitrator contacted the parties by telephone to determine the status of the case. After certain misunderstandings were resolved, the parties agreed to August 23, 1988, as the date of the hearing. A full hearing on the merits of Gunn's removal was held on that date. At the hearing, the agency asserted that the grievance was nonarbitrable because of the Union's procedural delays.

In his decision of November 21, 1988, the arbitrator ruled that because the grievance was time-barred, he had no jurisdiction to decide the merits. The arbitrator's decision rested on two independent grounds: (1) the Union violated the collective bargaining agreement by failing to meet with the VA to select an arbitrator within ten days after receipt of the FMCS list; and (2) the Union's silence from November 1987 to May 1988 "warranted the presumption" that it had "abandoned" Gunn's claim, that "laches" applied, and that it was "estopped" from proceeding.

## II

The Civil Service Reform Act (CSRA) provides that a federal employee seeking to challenge an agency disciplinary action may appeal the decision to the Merit Systems Protection Board, or, if the employee belongs to a collective bargaining unit of federal employees, pursue any grievance and arbitration procedure provided by the collective bargaining agreement. 5 U.S.C. § 7121(e) (1982); *Cornelius v. Nutt,* 472 U.S. 648, 650, 105 S.Ct. 2882, 2884, 86 L.Ed.2d 515 (1985).

Gunn chose to challenge his removal under a negotiated grievance procedure in accordance with section 7121(e). Pursuant to 5 U.S.C. § 7121(f), the standard for review of arbitral decisions is that set forth

in 5 U.S.C. § 7703 (1982), the same standard as for review of final decisions of the MSPB. *Id.; Gonce v. Veterans Admin.,* 872 F.2d 995, 997 (Fed.Cir.1989). Thus, we review the arbitrator's ruling on arbitrability in accordance with section 7703(c) (1982) [1] which provides the following standards:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) obtained without procedures required by law, rule, or regulation having been followed; or

(3) unsupported by substantial evidence.

## III

### A

Article 14, Section 2(A) of the agreement provides for the selection of arbitrators as follows:

On or after the date of the notice to invoke arbitration, the moving party will request the Federal Mediation and Conciliation Service to provide a list of seven (7) impartial persons to act as an arbitrator. *The parties shall meet within ten (10) calendar days after receipt of such list to select an arbitrator* (this may be done by telephone for national level grievances). If they cannot mutually agree on one of the listed arbitrators, then management and the Union will alternately strike one arbitrator's name from the list of seven (7) and will then repeat this procedure. The remaining person shall be the duly selected arbitrator. The procedure to determine who strikes the first name will be determined by lot. If either party refuses to participate in the selection process, the other party will make a selection of an arbitrator from the list.

(Emphasis added.) In this case, the parties met approximately forty days after receipt

1. The government posits that procedural questions should be left to the arbitrator to decide, citing to *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964). That opinion addresses judicial enforcement of private arbitration agreements, whereas here, petitioners have a statutory right of judicial review for procedural as well as substantive matters under the statutory standard. *See Gonce v. Veterans Admin.,* 872 F.2d 995, 997 (Fed.Cir.1989) (nonarbitrability holding reviewed under § 7703(c) standard).

of the list of arbitrators to select an arbitrator, rather than within the ten day period specified.

■ As an initial matter we cannot agree that the Union's failure to act within ten days in selecting an arbitrator is in itself a *jurisdictional* defect. Although finding no waiver of the contract requirement by the government, the arbitrator recognized that time limits for selection of an arbitrator set forth in the master agreement *could* be waived. The possibility of waiver of that requirement negates its being a jurisdictional prerequisite to an arbitrator's exercise of authority. *Cf. Bacashihua v. Merit Systems Protection Board*, 811 F.2d 1498, 1500 (Fed.Cir.1987) (regulations setting a twenty-day time limit for filing appeals with the Board with waiver for good cause means time limit is not jurisdictional). Indeed, at oral argument the government did not contest that, in other arbitrations, similar timeliness issues could have been but were not raised, and the decisions are not considered nullities, which they would be if the time limit were jurisdictional.

■ The arbitrator's holding that the Union violated section 2(A) is premised on an interpretation of that section which places the burden upon the Union, as the "moving party," to insure that the ten-day time limit for selecting an arbitrator is met. The parties argue the correctness of that interpretation and particularly whether the right of the other party to unilaterally select an arbitrator is the sole consequence under section 2(A) in the event an arbitrator has not been selected within the prescribed ten-day time limit. Assuming without deciding that the arbitrator's interpretation is correct,[2] we conclude that the VA's failure to raise any objection to the tardiness of selection until the final hearing constitutes a waiver of the ten-day provision in the agreement for reasons that follow.

The list of arbitrators was sent concurrently to the VA as well as the Union. There is only conclusory conflicting evidence on what happened to cause the delay during the interim between receipt of the list of arbitrators and the meeting date. What is clear is that, when the parties met to select an arbitrator, the VA's representative simply followed the striking procedure set out in the agreement. The VA made no timeliness objection on the record then or, indeed, at any time until the hearing date almost a year later.[3]

The federal policy favoring arbitration of labor disputes has as its rationale, *inter alia*, that it is generally a faster, cheaper and less rigid proceeding than litigation, *Gonce v. Veterans Admin.*, 872 F.2d at 999, and that it facilitates and encourages amicable settlements of disputes between labor and management. *See*, 5 U.S.C. § 7101(a)(1)(C). The collective bargaining agreement is the primary tool used in the arbitration process. Arbitrator Howell was correct in stating that the parties to the agreement here have the contractual right to have its terms respected and that a grievance matter should be heard promptly and orderly. However, he also recognized that procedural requirement clauses should be interpreted "indulgently" to permit arbitration of a given dispute. Indeed, he acknowledged that the practice of the parties was to stay "within the general guidelines" of the ten-day time provision—a statement that implies that a practical rather than a technical interpretation was given the provision in the past.

In any event, the government's position is not one which is sustainable simply be-

---

2. The government asserts that an arbitrator's interpretation of a collective bargaining agreement is largely unreviewable, citing *Devine v. White*, 697 F.2d 421, 440 (D.C.Cir.1982). We point out that our precedent does not provide for such a narrow review. *See, e.g., Huey v. Department of Health & Human Serv.*, 782 F.2d 1575, 1577 (Fed.Cir.1986) (the interpretation of a collective bargaining agreement is a matter for the court).

3. Contrary to the government's argument, *Gonce v. Veterans Admin.*, 872 F.2d 995 (Fed. Cir.1989), is not dispositive of this case despite the fact that the same collective bargaining agreement was at issue there. That case dealt with the interpretation and application of different terms in the agreement.

cause the contract provision was not followed. That is, even if there were a breach of the ten-day provision, it was not *per se* fatal to arbitrability. If a party seeks to invoke a nonjurisdictional procedural time requirement of an agreement, "orderliness" of procedure and efficiency of process require that the party make a *timely* objection. A party may not keep silent and wait to raise a nonjurisdictional matter at the hearing. Here, the Union was clearly prejudiced by a surprise defense. It was relegated to tendering proof by affidavit that the delay was by agreement. The arbitrator did not find such proof persuasive. On the other hand, even the government's witness had no clear recollection of the events leading up to or during the selection, and could not remember the selection of arbitrators in the other proceedings at the same time. Timely raised, proof of the matter would have been simple. The tardiness of the government's objection has made it difficult. On this record, we are compelled to conclude that, if the parties did not actually agree to the delay in selection, the government at least waived any objection.

### B

■ The arbitrator's second ground for holding nonarbitrability is that the grievance was abandoned. The arbitrator found abandonment because of the Union's delay between the arbitrator's letter of November 13, 1987, proposing hearing dates and the Union's "first contact" with the agency on May 16, 1988, proposing a hearing date, a period of approximately six months. From this delay, he presumed prejudice to the agency because of the passage of time and the unavailability of witnesses.

The record contains evidence that the government advised the arbitrator, in response to his call on November 14, 1987, that there was a "backlog" of cases and that "it was impossible to say when the Union will pursue the case to hearing." Also, a then-Union official, who was to

handle this case, was fired. In addition, there was a mix-up in scheduling a hearing on a related grievance filed by Gunn over a suspension the agency relied on in determining the penalty in this case and which the Union wished to have resolved first. The Union urges that these facts negate an inference of abandonment. While delay may give rise to an agency's reasonably believing that the grievance has been abandoned, the totality of the circumstances may also negate such an inference. We seriously question the candor of the government's assertion, on the facts here, that it actually believed this grievance was abandoned.

In any event, the government devotes a single paragraph of its brief to this ground of dismissal, urging only that the arbitrator's findings of unreasonable delay *and prejudice*, both of which it agrees are necessary to sustain its defense of abandonment here, are supported by substantial evidence. We have examined the citations to the evidence of record on which the agency relies, indeed, the entirety of the record before us, and cannot agree. There is simply *no* evidence that any government witness was unavailable on the hearing date or any other evidence of prejudice in the agency's proof of the merits. Accordingly, we hold that the arbitrator's decision that the grievance was abandoned is unsupported by substantial evidence.

### C

Contrary to the arbitrator's view, the delays here were not jurisdictional but mere procedural defects.[4] Such procedural defects, unless clearly harmful to resolution of the merits, should be resolved against forfeiture of the right to process a grievance. Strict construction of procedural requirements in arbitration, in this case making them even more rigid than in board proceedings, could only chill the selection of arbitration over the selection of administrative review. That result would be incon-

---

**4.** The arbitrator also appears to have based the nonarbitrability holding on a belief that the asserted delays gave rise to "laches" or "estoppel" here. Petitioners correctly point out that the principles of laches and estoppel because of delay pertain to the initiation of a grievance or arbitration, not to delay or dilatoriness during the course of the proceedings.

sistent with the statute, 5 U.S.C. § 7121(e), which is designed to give eligible employees the free choice between appeal to the Merit Systems Protection Board and what should be the more informal arbitration procedure.

## IV

The arbitrator in this case heard the arbitrability arguments first and then heard arguments on the merits. The opinion of the arbitrator indicates that the VA and the Union agreed at the arbitration hearing to permit the arbitrator to rule first on the arbitrability issues. If the grievance was not deemed arbitrable, the arbitrator stated in its opinion that "my deliberations would end at that point;" "I would not go into the merits of the case." Because we hold that Gunn's grievance is arbitrable, and *reverse* the decision of the arbitrator, we *remand* this case to the arbitrator so that a decision on the merits may be rendered.

## V

## COSTS

Each party shall bear their own costs. REVERSED AND REMANDED.