# United States Court of Appeals
# for the Federal Circuit

---

**JIMMIEKAYE BUFFKIN,**
*Petitioner*

**v.**

**DEPARTMENT OF DEFENSE,**
*Respondent*

---

2019-1531

---

Petition for review of an arbitrator's decision in No. 14-03218-3 by Joe M. Harris, Jr.

---

Decided: May 1, 2020

---

RICHARD J. HIRN, Hirn Law, Washington, DC, argued for petitioner.

ASHLEY AKERS, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by SHARI A. ROSE, JOSEPH H. HUNT, REGINALD THOMAS BLADES, JR., ROBERT EDWARD KIRSCHMAN, JR.

---

Before DYK, MOORE, and HUGHES, *Circuit Judges.*

DYK, *Circuit Judge.*

Jimmiekaye Buffkin appeals from an arbitrator's decision dismissing her grievance against her employer, the Department of Defense ("agency" or "government"). The arbitrator concluded that Ms. Buffkin's request for arbitration was untimely under the collective bargaining agreement ("agreement") between Ms. Buffkin's union and the agency. We hold that the arbitrator erred in concluding that the request for arbitration was filed too late under the terms of the agreement. However, we also conclude that the request was filed prematurely. We accordingly vacate and remand with instructions to address whether the union's premature request for arbitration ripened into a timely request.

BACKGROUND

Ms. Buffkin is a former teacher in the Diamond Elementary School operated by the Department of Defense for the children of military personnel. She is also a member of the Federal Education Association—Stateside Region ("union" or "FEA-SR"). The union and the agency are parties to the collective bargaining agreement which creates a negotiated grievance procedure for agency employees to contest adverse employment actions as an alternative to appeal to the Merit Systems Protection Board ("MSPB").

Article 26 of the agreement, entitled "Grievance Procedure," provides that "[a]ny grievance not resolved by the last step of the grievance procedure will be mediated . . . if requested by either party." J.A. 228, Article 26, § 6(a). Article 27 of the agreement, entitled "Arbitration" specifies that "the party who filed the grievance may proceed to arbitration." J.A. 230, Article 27, § 1(a).[1] Under Article 26,

---

[1]  In other parts of the agreement, it appears that either party can request arbitration. *See* J.A. 228, Article 26, at § 6(c) ("If the grievance is unresolved by mediation, [either party] may pursue the grievance to arbitration.").

"[b]oth parties agree to comply with the time limits established in the grievance procedure." J.A. 228, Article 26, § 7(a)(3). The agreement requires that "[a] written request for arbitration . . . be served on the opposing party within twenty (20) days following the conclusion of the last stage in the grievance procedure." J.A. 230, Article 27, § 1(b). "The date of the last day of mediation will be considered the conclusion of the last stage in the grievance procedure . . . . [and t]he grievance may then proceed to arbitration in accordance with Article 27." J.A. 228, Article 26, § 6(c). The agreement specifies that "[f]ailure to comply with established time limits will serve as a basis for either party to advance the grievance to the next step or to reject a grievance." *Id.*, § 7(a)(3).

Ms. Buffkin was removed from her position by the agency for misconduct—an adverse employment action under 5 U.S.C. § 7512. Ms. Buffkin elected to challenge her removal through the negotiated grievance procedure rather than at the MSPB. The agency denied Ms. Buffkin's grievance but requested that the matter be referred for mediation. The union and the agency met with a mediator on December 12–13, 2012, in an attempt to resolve this grievance. No agreement was reached. On July 29, 2014, the union submitted a written request for arbitration to the agency. The agency signed the request and the parties received a list of arbitrators from the Federal Mediation and Conciliation Service on August 20, 2014. Even so, on March 17, 2015, the agency prepared a document entitled "FEA-SR Open Grievances," listing Ms. Buffkin's grievance as an open grievance. On March 25, 2015, the parties held another mediation session in which Ms. Buffkin's grievance was discussed. The union and the agency selected an arbitrator in January of 2017. For the first time, on January 31, 2018, the agency argued that the request for arbitration was untimely. After a number of requests to delay by the agency, a hearing was held on April 23, 2018.

The arbitrator found that the case is not arbitrable because the union did not invoke arbitration within 20 days after the 2012 mediation concluded. Ms. Buffkin appeals, asking that the decision of the arbitrator be reversed and the case remanded for a decision on the merits. We have jurisdiction under 5 U.S.C. §§ 7121(f) and 7703(b)(1) and 28 U.S.C. § 1295(a)(9).

## DISCUSSION

### I

Under 5 U.S.C. § 7121(e)(1), part of the Civil Service Reform Act of 1978, a federal employee seeking to challenge disciplinary action by her employing agency may appeal her claim to the MSPB or, alternatively, take her claim to an arbitrator under a negotiated grievance procedure created by collective bargaining agreement. The arbitrator's decision is reviewed by this court under 5 U.S.C. § 7121(f) using the same standard of review that applies to appeals from decisions of the MSPB. *See Cornelius v. Nutt*, 472 U.S. 648, 661 n.16 (1985); *Newman v. Corrado*, 897 F.2d 1579, 1582 (Fed. Cir. 1990).

Section 7703(c) requires this court to set aside "any agency action, findings, or conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see also Appleberry v. Dep't of Homeland Sec.*, 793 F.3d 1291, 1295 (Fed. Cir. 2015). The same standard applies to review of arbitration decisions. 5 U.S.C. § 7121(f). Unlike situations prevailing in "judicial enforcement of private arbitration agreements," the government employee in arbitration has a "statutory right of judicial review for procedural as well as substantive matters under the statutory standard" of § 7703. *Gunn v. Veterans Admin. Med. Ctr., Birmingham, Ala.*, 892 F.2d 1036, 1037 n.1 (Fed. Cir. 1990).

## II

Before addressing the arbitrator's decision here, it is necessary to dispel some confusion as to the governing law. Both the arbitrator and the government take the position that the arbitrator is bound to apply in this arbitration the decisions of the Federal Labor Relations Authority ("FLRA"). Under the agreement in this case, the "[a]rbitrator[] [was] bound by the holdings and interpretations of the Merit Systems Protection Board, the FLRA, and the Agency's regulations as provided by law." J.A. 232, Article 27, § 8. The arbitrator concluded that this language "means that the parties agreed that as arbitrator in this case, I am bound by" FLRA decisions. J.A. 8. That is not correct.

The FLRA and MSPB have different substantive jurisdictions. "Under the [Civil Service Reform] Act's simplified scheme, employment matters involving federal employees' rights to engage in union-related activities generally may be raised with the FLRA as unfair labor practice charges,[2] while matters involving hiring, firing, failure to promote, and the like are within the jurisdiction of the MSPB." *Wildberger v. Fed. Labor Relations Auth.*, 132 F.3d 784, 787 (D.C. Cir. 1998). Without addressing the myriad situations in which a litigant can bring a claim against her employer under a collective bargaining agreement, in general, for cases appealable to the MSPB or where arbitration is an alternative to an MSPB appeal (such as those related to adverse actions under 5 U.S.C. §§ 7512 and 7121(f)), the Supreme Court in *Cornelius v. Nutt*, 472 U.S. 648 (1985), held that "Congress clearly intended that an arbitrator

[2]    5 U.S.C. § 7122(a) provides that "[e]ither party to arbitration under this chapter may file with the [FLRA] an exception to any arbitrator's award . . . (other than an award relating to a matter described in section 7121(f) of this title)".

would apply the same substantive rules as the Board does in reviewing an agency disciplinary decision." *Id.* at 660. Thus, "*Cornelius* requires that arbitrators 'adhere to the board's interpretation of . . . substantive rules,' such as 'the standard of review for substantial evidence and the harmful error rule.'" *Appleberry*, 793 F.3d at 1296 (quoting *Wissman v. Soc. Sec. Admin.,* 848 F.2d 176, 178 (Fed. Cir. 1988)). The arbitrator, under the facts of this case, was consequently bound by the MSPB's substantive rules and the decisions of this court, not those of the FLRA. He was only bound to apply FLRA law in cases that would be appealable to the FLRA.[3]

## III

Time limits, such as the ones at issue here, are procedural matters. "The only procedures an arbitrator must follow are those specified in the collective bargaining agreement . . . or required by statute." *Wissman*, 848 F.2d at 178. There are no relevant statutory time limits here, only time limits set by the agreement. We review an arbitrator's interpretation of the requirements of a collective bargaining agreement de novo. *Garcia v. Dep't of Homeland Sec.*, 780 F.3d 1145, 1147 (Fed. Cir. 2015) ("Interpretation of a collective-bargaining agreement is a question of law we

---

[3]    Even the FLRA appreciates this distinction. In *United States Small Business Administration (Agency) & American Federation of Government Employees Local 3841 (Union)*, 70 F.L.R.A. 525 (May 2, 2018), the FLRA rejected the applicability of MSPB and Federal Circuit cases to its rulings: "Section 7703(c) sets forth the standard of review that the Federal Circuit applies to Merit Systems Protection Board decisions. As such, the [FLRA] has repeatedly rejected the applicability of *Gunn* and § 7703 to the review of procedural-arbitrability determinations under the Federal Service Labor-Management Relations Statute." *Id.* at 528 n.32 (citation omitted).

review de novo."); *Appleberry*, 793 F.3d at 1297; *Muller v. Gov't Printing Office*, 809 F.3d 1375, 1379 (Fed. Cir. 2016); *Gunn*, 892 F.2d at 1037 n.1. We have sustained arbitrator decisions dismissing employee claims for failure to comply with applicable time limits. *Appleberry*, 793 F.3d at 1297; *Gonce v. Veterans Admin.*, 872 F.2d 995, 999–1000 (Fed. Cir. 1989); *Herrera v. Dep't of Homeland Sec.*, 498 F. App'x 35, 39 (Fed. Cir. 2012).

IV

The arbitrator considered two relevant provisions of the agreement: one stating that the "request for arbitration . . . must be served . . . within twenty (20) days following the conclusion of the last stage in the grievance procedure," J.A. 230, Art. 27, § 1(b), and another defining "the conclusion of the last stage in the grievance procedure" as "[t]he date of the last day of mediation." J.A. 228, Art. 26, § 6(c). The arbitrator found that the case was not arbitrable because "the [u]nion failed to serve the [a]gency with a request for arbitration . . . within twenty days after the 2012 mediation session concluded." J.A. 5 (emphasis added). The arbitrator interpreted the phrase "the date of the last day of mediation" to refer to the first mediation session because "nothing in the [agreement] provid[ed] for two mediation sessions." *Id.* The arbitrator concluded that "[t]he fact that the expired grievance was brought up again at the 2015 mediation session . . . means nothing; bringing it back before the parties for a second mediation session did not revive it." *Id.* He also concluded that Article 26 of the agreement allowed the agency to cancel or "reject" a grievance if the union failed to timely file arbitration. The arbitrator noted that this strict construction is supported by a number of FLRA decisions; decisions which, as we held earlier, are not binding in this MSPB-related proceeding.

We conclude that, under the plain language of the agreement, the union did not invoke the arbitration too late under the agreement. The union was not required to

invoke arbitration until "within twenty (20) days following the conclusion of <u>the last stage of the grievance procedure</u>." J.A. 230, Art. 27, § 1(b) (emphasis added). The agreement explains that "[t]he date of the last day of mediation will be considered the conclusion of the last stage in the grievance procedure." J.A. 228, Art. 26, § 6(c). The agreement is thus plain on its face—the union had to invoke arbitration within 20 days of the last day of mediation. Because the union and the agency did not resolve Ms. Buffkin's grievance in the 2012 mediation and held a second mediation session in 2015, the last stage of the grievance procedure, contrary to the arbitrator, was not the 2012 mediation but was the last date of the 2015 mediation. Thus, the union invoking arbitration in 2014 was not too late under the terms of the agreement.

The conduct of the parties confirms this interpretation. The Supreme Court has noted that "[t]he labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581–82 (1960); *see also Muller*, 809 F.3d at 1383 ("[P]ast practices can supplement a collective bargaining agreement."); *Cruz-Martinez v. Dep't of Homeland Sec.*, 410 F.3d 1366, 1370 (Fed. Cir. 2005). In *Cruz-Martinez* we upheld an arbitrator's dismissal of an employee grievance because his union waited longer than a year after invoking arbitration to request an arbitrator and schedule a hearing, in violation of an established practice of the parties. 410 F.3d at 1367, 1372. We found that the past practice there created a binding, consequential deadline even in the absence of express language in the collective bargaining agreement. *Id.* at 1370. "Clear and long-standing practices of the parties—in other words, 'past practices'—can establish terms of the agreement that are as binding as any specific written provision." *Id.* We held that

"[t]he arbitrator's reliance on the sixteen years of the union's acquiescence in the past practice [wa]s substantial evidence supporting the arbitrator's decision" to dismiss the employee's claim. *Id.*

Here, it appears to have been common practice for the parties to hold a second mediation session. The parties had settled sixty-one grievances in 2015, which were discussed in mediations in 2012 and 2015. In at least two other arbitrations, based on grievances mediated in both 2012 and 2015, the agency did not object to the union's submitting a request for arbitration in 2014. In this case, the agency did not consider the grievance "resolved" after the first mediation. The agency also did not object to the union's invoking arbitration when the union submitted its request or during the selection of arbitrators. Not until January 31, 2018, over three years after the union submitted its request for arbitration, did the agency file a request to the arbitrator requesting to bifurcate the hearing and adjudicate arbitrability. The agency's conduct and past practices indicate that it did not think the union's request for arbitration was untimely.[4] The parties' conduct supports the interpretation that the last day of the second mediation session constituted "the last stage of the grievance procedure" under the agreement. The union did not invoke arbitration too late under the agreement.

V

The government now argues in the alternative, that the union invoked arbitration too early—by filing before the second mediation session. At oral argument, the government contended that, "[u]nder the plain language of the

---

[4]    We thus need not reach the issue of whether the government's conduct also constitutes waiver under *Gunn v. Veterans Admin. Med. Ctr., Birmingham, Ala.*, 892 F.2d 1036 (Fed. Cir. 1990).

master labor agreement[,] . . . the [union] has 20 days <u>following</u> the resolution of the mediation [to file for arbitration]." Oral Arg. 12:18–28 (emphasis added).[5] The issue appears to have been raised before the arbitrator in post-hearing briefing, but the arbitrator did not address it, and the union does not contend that this issue is not properly before us.

Federal courts have long recognized that a premature notice of appeal is effective. "[T]he courts of appeals quite generally have held premature appeals effective." *See* Advisory Committee's Note on 1979 Amendment to Fed. Rule App. Proc. 4(a)(2). This practice was codified in Rule 4(a)(2) of the Federal Rules of Appellate Procedure: "[a] notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry." The Supreme Court explained "that Rule 4(a)(2) permits a notice of appeal filed from certain nonfinal decisions to serve as an effective notice from a subsequently entered final judgment." *FirsTier Mortg. Co. v. Inv'rs Mortg. Ins. Co.*, 498 U.S. 269, 274 (1991). "[A] premature notice of appeal does not ripen until judgment is entered. Once judgment is entered, the Rule treats the premature notice of appeal 'as filed after such entry.'" *Id.* at 275 (quoting Rule 4(a)(2)). The Supreme Court explained that this practice "was intended to protect the unskilled litigant." *Id.* at 276.

---

[5]    *See also id.* at 19:57–20:17 ("[T]he parties still never filed a request for arbitration <u>within 20 days following</u>" the second mediation. (emphasis added)); Appellee's Br. 14 (arguing that even if the second mediation indeed constituted "the last stage in the grievance procedure," the "contention that the union could request arbitration <u>prior</u> to the conclusion of mediation [is] contrary to the plain language of the [agreement]" (emphasis added)).

The agency, here, does not argue that the time limit is jurisdictional, and it is clear that it is not.  *See Gunn*, 892 F.2d at 1038, 1039.  As we explained in *Gunn v. Veterans Admin. Med. Ctr., Birmingham, Ala.*, 892 F.2d 1036 (Fed. Cir. 1990), where issues of timeliness are not jurisdictional "but mere procedural defects":

> Such procedural defects, unless clearly harmful to resolution of the merits, should be resolved against forfeiture of the right to process a grievance.  Strict construction of procedural requirements in arbitration, in this case making them even more rigid than in board proceedings, could only chill the selection of arbitration over the selection of administrative review.  That result would be inconsistent with the statute, 5 U.S.C. § 7121(e), which is designed to give eligible employees the free choice between appeal to the Merit Systems Protection Board and what should be the more informal arbitration procedure.

*Id.* at 1039–40.  Given the informal nature of arbitration and the lack of surprise to the agency, "[l]ittle would be accomplished by prohibiting the [arbitrator] from reaching the merits of" a grievance where a premature request for arbitration has been filed.  *See FirsTier Mortg.*, 498 U.S. at 276.

Further, a premature request for arbitration being effective appears to be consistent with the parties' past practices.  The agency had not objected in at least three other arbitrations where the union invoked arbitration prematurely, and, as noted earlier, had waited over three years to object to the union doing so here.

Nonetheless, since this issue has not been addressed by the arbitrator, we think that the arbitrator should address it in the first instance.  On remand, the arbitrator is not, of course, bound to follow FLRA decisions that have held such premature requests for arbitration ineffective.  *See, e.g.*,

*United States Dep't of Def. Domestic Elementary & Secondary Sch. (Agency) & Fed. Educ. Ass'n Stateside Region (Union) (FEA-SR)*, 71 F.L.R.A. 236 (July 16, 2019).

### CONCLUSION

We conclude that the union did not invoke arbitration too late, and we reverse the decision of the arbitrator in this respect. The case is remanded to the arbitrator for a determination of whether the union's premature request for arbitration ripened into a timely one.

**VACATED AND REMANDED**

### COSTS

Costs to petitioner.