NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**EVELYN LEE,**
*Petitioner*

**v.**

**FEDERAL AVIATION ADMINISTRATION,**
*Respondent*

---

2019-1790

---

Petition for review of an arbitrator's decision in No. CSA-18-G2018-00731-ESW by Patrick Halter.

---

Decided: July 29, 2020

---

MARGUERITE L. GRAF, National Air Traffic Controllers Association, Washington, DC, for petitioner.  Also represented by MAGEN STEVENS, ERINA M. HAMMOND.

ALISON VICKS, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by ETHAN P. DAVIS, TARA K. HOGAN, ROBERT EDWARD KIRSCHMAN, JR.

---

Before PROST, *Chief Judge,* REYNA and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge.*

Evelyn Lee petitions for review of an arbitrator's award imposing a 30-day suspension of her employment with the Federal Aviation Administration. Because substantial evidence supports the Arbitrator's decision to sustain all three agency charges against Ms. Lee, we affirm.

I

Ms. Lee is a civil engineer for the FAA, where she has worked since 2012. In April 2017, a co-worker sent an unsolicited email containing inappropriate pictures to Ms. Lee's work email address. When that email came to light, Ms. Lee's second-line manager, John Smith, requested that the agency's investigations unit pull the internet and email history from both the sender's and Ms. Lee's work computers.

The forensic report of Ms. Lee's FAA internet history spanned more than 1,900 pages and revealed that between January and April 2017, Ms. Lee conducted 33,968 online transactions. Mr. Smith saw concerning levels of activity on eBay, Amazon, and Etsy, among other non-work-related sites. He was particularly concerned that, both during and after work hours, Ms. Lee was frequently visiting Etsy where, as he discovered, she sold handmade crafts through her account, "BoosTinyBits."

After receiving this report, Ms. Lee was called to an investigatory interview. The scheduling notice stated that the interview's purpose was to discuss potential discipline regarding allegations of "Misuse/Abuse of Government Time, Misuse/Abuse of Government Computer/Internet/ Email, Sending/Receiving Inappropriate Jokes/Pictures of a Sexual Nature, and Failure to Report." J.A. 210. At the interview, Ms. Lee was questioned in the presence of her union representative about both the inappropriate email

and about her internet activity on her work computer. Ms. Lee, who was unaware that her internet history had been accessed, denied using her government computer "for unofficial personal reasons while on duty for any reason." J.A. 181. She also denied making purchases from eBay and Amazon while on government time. *Id.* When asked if she was "using [her] Government computer/laptop for unofficial purposes," including making purchases from Amazon, Ms. Lee answered, "No. I purchase stuff from Amazon for work." *Id.* And when asked the same question regarding purchases from eBay, she answered, "I do not know." *Id.*

When asked if she was "conducting personal business and/or running a commercial online business," Ms. Lee responded, "Yes," but she denied doing so while on government time. J.A. 182. Ms. Lee confirmed that she owned and/or operated a "business named, 'Boos Tiny Bits,'" and that she was aware that she was unauthorized to use government time or her government computer to operate a business. *Id.* When asked if there was "absolutely anything that [she] would like to disclose to the Agency," she answered, "No." J.A. 183. At several points, Ms. Lee asked the interviewer to clarify his questions, but he told her that he could not depart from the questions as written. In response to a closing question about her relationship with the sender of the inappropriate email, and after conferring with her union representative, Ms. Lee stated simply that she did not understand the question. *Id.*

In October 2017, the FAA proposed Ms. Lee's removal for misuse of government property, misuse of government time, and lack of candor stemming from her unauthorized internet usage both on- and off-duty, including running a "commercial online business" on Etsy. J.A. 185–87. In her written response, Ms. Lee argued, as relevant, that the agency overestimated the time she spent online for personal reasons, asserting that she sometimes left websites open in the background and it was unclear to her how the forensic report accounted for those open windows. Due to

those concerns, Mr. Smith requested a supplemental report from the investigations unit.  The supplemental report excluded obviously work-related transactions and removed from the time calculations any periods where the time between active clicks on a certain webpage was more than five minutes.  Still, 22,829 internet transactions remained.  Based on this narrowed data, the supplemental report calculated that Ms. Lee had an average of 1 hour and 44 minutes per day of not clearly work-related internet use over the 45 workdays on which her usage was tracked.

Using the supplemental report, the FAA issued its final decision in April 2018 mitigating the penalty from removal to a 45-day suspension.  The mitigation was based on Ms. Lee's lack of prior formal discipline, her satisfactory work performance, her five years of federal service, and her statement that she had stopped Etsy transactions at work, stopped accessing the Etsy website, and ceased "all non-work[] related usage of Amazon and eBay."  J.A. 204.  The National Air Traffic Controllers Association (Union) filed a grievance on Ms. Lee's behalf contesting her suspension under the terms of a consolidated bargaining agreement (CBA) with the FAA.  After the grievance was denied, the Union invoked arbitration.

On October 31, 2018, the Arbitrator held a hearing at which Ms. Lee, Mr. Smith, and the creator of the forensic data report testified.  On February 19, 2019, the Arbitrator issued an award finding that the FAA had proven each charge: misuse of government property, misuse of government time, and lack of candor.  But because the agency had not complied with a CBA requirement for "prompt" disciplinary action (by waiting five months after the investigatory interview to initiate the action), he reduced Ms. Lee's 45-day suspension to 30 days.

Ms. Lee petitions for review of the Arbitrator's decision.  We have jurisdiction under 5 U.S.C. §§ 7121(f), 7703(b)(1) and 28 U.S.C. § 1295(a)(9).

## II

A federal employee seeking to challenge disciplinary action by her employing agency may appeal her claim to the Merit Systems Protection Board or, alternatively, take her claim to an arbitrator under a negotiated grievance procedure created by collective bargaining agreement. 5 U.S.C. § 7121(e)(1); *Buffkin v. Dep't of Def.*, 957 F.3d 1327, 1329 (Fed. Cir. 2020). Under 5 U.S.C. § 7121(f), we review an arbitrator's decision using the same standard of review that applies to appeals from decisions of the MSPB, *see* 5 U.S.C. § 7703. Thus, we must affirm the Arbitrator's decision unless it is not supported by substantial evidence, was obtained without following procedures required by law, rule, or regulation, or was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 7703(c); *Martin v. Dep't of Veterans Affairs*, 412 F.3d 1258, 12664 (Fed. Cir. 2005). Ms. Lee challenges the Arbitrator's determinations regarding each of the three charges. We consider each in turn.

## A

We first address whether substantial evidence supports the Arbitrator's finding that the FAA proved its charge of misuse of government property. The Arbitrator found that the FAA proved this charge on two grounds: excessive personal internet usage and use of FAA internet for a commercial purpose or financial gain. As to the first ground, Ms. Lee contends that the supplemental forensic report exaggerated her unauthorized internet use because it still included work-related transactions and overestimated the time she actively spent on any given webpage. As to the second ground, Ms. Lee contends that her Etsy-related activities were not for personal financial gain, and there was insufficient evidence to show she was conducting a commercial business.

Unauthorized FAA internet use includes "[u]sing the Internet for any purpose that violates the law, or FAA

rules, regulations, and policies."   J.A. 703 (FAA Order 1370.79A(6)(a)(2)(a)).  It also includes "[u]sing FAA Internet resources for any commercial purpose, for financial gain . . . or in support of outside individuals or entities." J.A. 703 (FAA Order 1370.79A(6)(a)(2)(f)).  While "limited personal use"—defined as "brief communications or Internet searches"—is authorized, it must not interfere with the FAA user's employment or other obligations to the government or violate other FAA rules.   J.A. 703 (FAA Order 1370.79A(6)(a)(1)(b)).

Substantial evidence supports the first ground that Ms. Lee's personal internet usage was not "limited" within the meaning of the FAA's internet policy.  In making this finding, the Arbitrator reasonably relied on the FAA's calculation from the supplemental forensic report over Ms. Lee's own estimation.[1]  The Arbitrator stated in his award that, even halving the number of entries on the supplemental report, over 11,000 unauthorized internet transactions would remain, equating to at least 163 transactions daily.  J.A. 16.  Mr. Smith's review of the forensic report provides further support.  Mr. Smith testified that when he compared Ms. Lee's internet usage with that of her coworker while investigating the inappropriate email, he saw that 95% of the coworker's internet usage was work-related.  J.A. 742.  By contrast, when he reviewed Ms. Lee's internet usage, he "didn't know where to start" because he had never seen so much data for such a limited timeframe. J.A. 742, 748.   Mr. Smith also testified that numerous

---

[1]    At the arbitration hearing, Ms. Lee testified that more than half of the entries in the supplemental report were duplicates; and her own analysis of the forensic report showed that she only spent an average of 3.25% of her workday on personal internet use, far less than the agency's calculation that she averaged 1 hour and 44 minutes per day in personal use.

pages of the supplemental report showed absolutely no work-related data entries and did not reflect "limited personal use" of the internet.  J.A. 760.

Substantial evidence also supports the Arbitrator's finding on the second ground that Ms. Lee used FAA internet resources for a commercial purpose or financial gain by operating her "BoosTinyBits" Etsy shop.  Initially, like the Arbitrator, we note that Etsy is an e-commerce platform designed to sell goods.  *About Etsy*, https://www.etsy.com/about (describing Etsy as a "global marketplace for unique and creative goods").  Although Ms. Lee may not have set up her Etsy profile with the intention of operating a business, she was admittedly *selling* goods on Etsy between January and April 2017.  J.A. 53.  Whether or not she actually turned a profit, her Etsy sales were, by definition, commercial.  The record is replete with evidence that she facilitated her Etsy sales while using FAA internet on her work computer.  For example, the forensic report shows that on January 19, 2017, Ms. Lee accessed Etsy to view her "Sold Orders" and created shipping labels for items sold from her shop on that day.  *See* J.A. 239.  There is more than sufficient evidence to show that Ms. Lee was using FAA property for a "commercial purpose" or for "financial gain" in violation of FAA policy.

Accordingly, substantial evidence supports the Arbitrator's decision to sustain the misuse of government property charge.

B

Next, we consider whether substantial evidence supports the Arbitrator's finding that the FAA proved its charge of misuse of government time.  As with the first charge, the Arbitrator found that the FAA proved this charge on two grounds: that Ms. Lee recorded as duty hours the time she dedicated to repeatedly accessing websites for unauthorized purposes and for operating her personal business.  J.A. 17–18.  Ms. Lee only briefly challenges

this determination, citing the same arguments she asserted for the misuse of property charge. Pet. Br. 23–24.[2] We continue to find those arguments unconvincing. And Ms. Lee does not separately dispute the Arbitrator's finding that she improperly recorded her time in her time and attendance reports. *See* J.A. 17. Ms. Lee has not shown a lack of substantial evidence for the Arbitrator's finding on this charge.

C

Finally, we address whether substantial evidence supports the Arbitrator's finding that the FAA proved its charge of lack of candor. The FAA's Human Resources Policy Manual (HRPM) Standards of Conduct require employees to give complete and truthful statements to any manager, Special Agent, or department official conducting an investigation. J.A. 187 (citing HRPM Standards of Conduct ¶ 9(a)). FAA employees are required to review the Standards of Conduct annually, and Ms. Lee confirmed at the start of the investigatory interview that she was aware that under those standards she needed to provide "complete and truthful information." J.A. 179, 765–66.

To prove lack of candor, the FAA had to establish that Ms. Lee gave statements that she knew were inaccurate or incomplete. J.A. 18; *see Ludlum v. Dep't of Justice*, 278 F.3d 1280, 1283–85 (Fed. Cir. 2002) (distinguishing lack of candor as a "broader and more flexible concept" than a charge of falsification, in that lack of candor does not

---

[2]    Ms. Lee also contends, in a one-sentence footnote, that this second charge is duplicative of the first. Pet. Br. 23 n.19. While we need not address such undeveloped arguments, we note that, despite using some of the same evidence as the first charge, the misuse of government time charge involves a different element, i.e., Ms. Lee misreporting her time, versus misusing government property.

involve a separate element of intent to deceive).  Ms. Lee does not deny that she provided incomplete answers to the interviewer but asserts that she did not *knowingly* provide such answers, largely because she did not understand the questions.

Once again substantial evidence supports the Arbitrator's conclusion sustaining this charge.  First, the record supports the Arbitrator's finding that Ms. Lee knew her e-commerce business was under investigation.  *See* J.A. 18.  While she was unaware that her internet history had been accessed, Ms. Lee had ample opportunity to discern that her internet activities, including her Etsy operations, were under investigation.  The interview notice itself listed multiple broad allegations, and a significant portion of the interview specifically asked about her eBay and Amazon activities as well as "operating a business" identified as "BoosTinyBits."  J.A. 182, 210.  There is no indication that, at the time of the interview, Ms. Lee objected to the characterization of her Etsy account as a "business"; rather, she simply confirmed that she owned or operated that business.  J.A. 182.  Nevertheless, Ms. Lee did not supplement her prior answers to disclose, for instance, that she used FAA resources to operate her Etsy business when given the opportunity at the end of the interview.  *See* J.A. 183.

Further, Ms. Lee's answers to the questions about any unauthorized eBay and Amazon purchases also support the Arbitrator's rejection of her explanation that she did not understand the phrase "unofficial purposes."  *See* J.A. 19.  Ms. Lee's response that she "purchase[d] stuff from Amazon for work," J.A. 181, adequately supports a conclusion that she understood the phrase "unofficial purposes" to mean not work-related.

Despite the inartful phrasing of some of the interview questions, it was reasonable for the Arbitrator to find them clear enough to elicit more fulsome responses than the one-word yes or no answers Ms. Lee repeatedly gave.  Although

Ms. Lee later testified that she found the questions regarding her internet activity and business operations confusing, none of her responses to those questions state a lack of understanding like the response she gave to the interpersonal relationships question.  *Compare* J.A. 181–82, *with* J.A. 183.  That she provided a response stating her lack of understanding for that question, but none of the others, provides an additional basis for the Arbitrator not to credit Ms. Lee's subsequent explanations for the way she answered.

Again, substantial evidence supports the Arbitrator's finding that Ms. Lee demonstrated a lack of candor at her interview.

## III

We have considered Ms. Lee's remaining arguments and find them unpersuasive.  Because substantial evidence supports the Arbitrator's decision, we affirm.

**AFFIRMED**