# United States Court of Appeals for the Federal Circuit

---

**JACQUANA WILLIAMS,**
*Petitioner*

**v.**

**FEDERAL BUREAU OF PRISONS,**
*Respondent*

---

2022-1575

---

Petition for review of an arbitrator's decision in No. 210604-07363 by Stephen Douglas Bonney.

---

Decided: July 6, 2023

---

JACK K. WHITEHEAD, JR., Whitehead Law Firm, Baton Rouge, LA, argued for petitioner. Also represented by JOHN-ED LONG BISHOP.

EBONIE I. BRANCH, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by BRIAN M. BOYNTON, ERIC P. BRUSKIN, PATRICIA M. MCCARTHY.

---

Before MOORE, *Chief Judge*, MAYER and HUGHES, *Circuit Judges*.

MOORE, *Chief Judge*.

Jacquana Williams appeals an arbitrator's final decision upholding her removal from the Federal Bureau of Prisons (BOP).  Because the arbitrator failed to properly analyze the *Douglas* factors, we vacate and remand.

## BACKGROUND

Ms. Williams was employed as a correctional officer with the BOP at the Federal Correctional Complex in Beaumont, Texas (FCC-Beaumont) beginning March 4, 2018.  Around January 2016, Ms. Williams met Alex Hayes.  The two were engaged in July 2018 and had a child in September 2018.  Mr. Hayes had been in BOP custody from June 2005 until July 2013, including as an inmate at FCC-Beaumont from June 2005 to October 2006.  He was on supervised release until July 15, 2018.  Although Ms. Williams knew Mr. Hayes had previously been incarcerated, she was unaware he had been in federal custody.

In May 2019, after learning of Ms. Williams' relationship with Mr. Hayes, the BOP placed Ms. Williams on administrative reassignment, and Internal Affairs launched an investigation into whether Ms. Williams maintained improper contact with a former inmate and failed to report such contact.  Under the Standards of Employee Conduct, employees may not "show partiality toward, or become emotionally, physically, sexually, or financially involved with inmates, [or] former inmates." Appx. 73.[1]  If employees engage in improper contact with inmates or former inmates, then they must report the contact in writing to the BOP. Appx. 74.  The Standards define "former inmate" as "[a]n inmate for whom less than one year has elapsed since his/her release from [BOP] custody or supervision of a

---

[1]    "Appx." refers to the appendix filed by the BOP.  "S. Appx." refers to the supplemental appendix filed by Ms. Williams.

Federal court[,] . . . whichever is later." Appx. 72. Mr. Hayes met this definition of "former inmate" until July 15, 2019, one year after his supervised release ended.

While Internal Affairs' investigation was pending, Ms. Williams heard rumors about why she was reassigned, including that she was in a relationship with a former inmate. After questioning Mr. Hayes, she learned for the first time, on June 3, 2019, that he had been incarcerated in federal prison. She reported her relationship to the BOP the next day.

Internal Affairs concluded its investigation on July 8, 2019, finding Ms. Williams had engaged in improper contact with a former inmate and failed to timely report the contact. On February 5, 2020, the BOP issued a notice of proposed removal based on two charges: (1) improper contact with a former inmate; and (2) failure to timely report. The warden sustained the charges and removed Ms. Williams effective April 22, 2021.

Ms. Williams challenged her removal with an arbitrator through the negotiated grievance procedure. After a hearing, the arbitrator sustained the charge of improper contact with a former inmate. He found Ms. Williams violated the BOP's anti-fraternization rule from March 5, 2018 until July 15, 2019. The arbitrator, however, did not sustain the BOP's charge of failure to report. He found Ms. Williams did not learn Mr. Hayes was a former federal inmate until June 3, 2019 and reported it immediately. The arbitrator nevertheless upheld the BOP's penalty of removal because he determined the warden considered the relevant *Douglas* factors and exercised his discretion "within tolerable limits of reasonableness." Appx. 26–31. Ms. Williams appeals. We have jurisdiction under 5 U.S.C. §§ 7121(f), 7703(b)(1) and 28 U.S.C. § 1295(a)(9).

DISCUSSION

A federal employee seeking to challenge disciplinary action by her employing agency may either appeal her claim to the Merit Systems Protection Board (MSPB) or take her claim to an arbitrator through a negotiated grievance procedure created by collective bargaining agreement. 5 U.S.C. § 7121(e)(1); *Buffkin v. Dep't of Def.*, 957 F.3d 1327, 1329 (Fed. Cir. 2020). We review the arbitrator's decision under the same standard of review that applies to appeals from the MSPB. 5 U.S.C. § 7121(f). We must affirm the arbitrator's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

To take adverse action against an employee, an agency must show the charged conduct occurred, it affected the efficiency of service, and "the penalty imposed was reasonable in light of the relevant factors set forth in *Douglas*." *Malloy v. U.S. Postal Serv.*, 578 F.3d 1351, 1356 (Fed. Cir. 2009) (citing *Douglas v. Veterans Admin.*, 5 M.S.P.B. 313 (1981)). Ms. Williams does not challenge the sustained charge on appeal; she only challenges the penalty of removal. Specifically, she argues the arbitrator failed to perform the proper analysis of the *Douglas* factors in upholding her removal. We agree.

When an arbitrator sustains fewer than all of the agency's charges, the arbitrator "may mitigate to the maximum reasonable penalty" for the sustained charges unless the agency has indicated it desires a lesser penalty be imposed on fewer charges. *Lachance v. Devall*, 178 F.3d 1246, 1260 (Fed. Cir. 1999). Here, the BOP did not indicate it desired a lesser penalty than removal if the arbitrator only sustained the improper contact charge. Accordingly, because the arbitrator only sustained one of the BOP's two

charges, he was required to independently determine the maximum reasonable penalty to be imposed upon Ms. Williams. In such circumstances, the arbitrator must independently analyze and balance the relevant *Douglas* factors. *Tartaglia v. Dep't of Veterans Affs.*, 858 F.3d 1405, 1408 (Fed. Cir. 2017).

The arbitrator failed to conduct the independent analysis required under *Lachance* and *Tartaglia*. Rather, he simply deferred to the warden's analysis of the relevant *Douglas* factors. *See* Appx. 26–31. In upholding the penalty of removal, the arbitrator stated:

> On these facts, the just and fair thing to do would be to set aside the removal in favor of a long suspension, reinstate [Ms. Williams] to her position as a federal corrections officer, and order a back pay remedy. If this were a private sector case, I would do the just and fair thing, and I would have reasonable confidence that the courts would not overturn my decision. But the controlling law requires me to sustain the Agency's chosen penalty "if the Agency considered all of the relevant [*Douglas*] factors and exercised management discretion within tolerable limits of reasonableness." Thus, in my judgment, I am constrained to uphold the removal because management considered – perhaps by rote – the relevant *Douglas* factors and exercised its discretion – by only the narrowest of possible margins – within tolerable limits of reasonableness.

Appx. 31 (second alteration in original) (italics added) (internal citation omitted). It is clear from this passage the arbitrator misunderstood the relevant legal standard. Indeed, in summarizing the relevant law, he stated, "an agency's decision with respect to penalty is entitled to deference." Appx. 27. While this is generally the case, the arbitrator failed to appreciate that when he sustains fewer than all of the agency's charges, *he* is the one who must

determine the maximum reasonable penalty. *See Tartaglia*, 858 F.3d at 1408.

Despite this, the BOP argues the arbitrator conducted the proper analysis simply because he discussed specific *Douglas* factors. *See* Appx. 26–29. The arbitrator's discussion of the *Douglas* factors, however, amounted to nothing more than a deferential review of the *warden*'s analysis of the factors. For example, with respect to the final *Douglas* factor, the arbitrator simply found "the Warden entertained the possibility of lesser sanctions but rejected that possibility in favor of removal" because "the Warden testified that his loss of confidence in [Ms. Williams] took all options other than removal off the table." Appx. 29. Such reasoning only speaks to whether the *warden* considered the effectiveness of alternative sanctions, not whether the *arbitrator himself* believed alternative sanctions would be effective to deter similar misconduct.

Not only did the arbitrator fail to independently analyze the appropriateness of alternative sanctions, he accepted for sanctions purposes the warden's fact findings which the arbitrator himself had rejected. The warden testified that he found Ms. Williams untrustworthy because she failed to timely report her relationship with Mr. Hayes. *See* S. Appx. 62 ("[W]ithholding the information about her relationship with Mr. Hayes is obviously unacceptable. . . . So a failure to report is a serious offense."); S. Appx. 84–86 ("[H]aving not been truthful in that sense and having not been forthright with what transpired between her and Mr. Hayes is just too much of a chance that I'm not willing to – to overlook."). The failure to report charge—which clearly drove the warden's decision for removal—was not sustained by the arbitrator. Rather, the arbitrator found Ms. Williams immediately reported her relationship with Mr. Hayes as soon as she learned he had been in federal custody. Appx. 19–20 (finding Ms. Williams' testimony to be "entirely credible"). The arbitrator erred by deferring to

the warden's determination that Ms. Williams was untrustworthy because of her alleged failure to timely report.

We vacate the penalty of removal and remand for the arbitrator to independently analyze the relevant *Douglas* factors and determine the maximum reasonable penalty in light of the only sustained charge. On remand, the arbitrator should pay close attention to the adequacy of lesser sanctions in light of his finding that Ms. Williams immediately reported her relationship once she discovered Mr. Hayes was a former inmate.

## CONCLUSION

For the reasons given above, we vacate and remand the arbitrator's final decision.

## VACATED AND REMANDED

### COSTS

Costs awarded to Ms. Williams.